**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

JAMES WILLIAMS,      :
and            :
HECTOR HERNANDEZ     :
Individually and as Representatives of the Classes :
            :
      Plaintiffs,   :   Civil Case No. 8:16-cv-00058-PWG
            :
            :
v.             :
            :
CORELOGIC SAFERENT, LLC,   :
            :
      Defendant.   :
_____ :

**FIRST AMENDED CLASS ACTION COMPLAINT**

  COMES NOW, the Plaintiffs, James Williams and Hector Hernandez, pursuant to Fed. R.

Civ. P. 15(a)(1)(B), on behalf of themselves and the classes set forth below state as follows:

**INTRODUCTION**

  1.   This is a class action for damages, costs and attorney's fees brought against the

Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA").

  2.   Defendant is a consumer reporting agency that compiles and maintains files on

consumers on a nationwide basis. It maintains an extensive database of public records regarding

consumers. It then sells consumer reports generated from its database and furnishes these

consumer reports to management companies and landlords who use the reports to make decisions

regarding prospective tenants.

  3.   Plaintiff Williams applied to rent an apartment in Ellicott City, Maryland in January

2015.  In connection with his application for the apartment, The Residences At Oella Mill ("Oella Mill") requested a consumer report from Defendant. The consumer report provided by Defendant to Oella Mill was grossly inaccurate and contained a criminal conviction that did not belong to Plaintiff Williams. Specifically, Defendant inaccurately reported that Plaintiff Williams was a convicted sex offender arising from a sexual act with a minor. As a result of this inaccurate report, Oella Mill denied Plaintiff Williams the opportunity to rent an apartment for himself and his family. Accordingly, Plaintiff Williams alleges an individual claim under 15 U.S.C. § 1681e(b), which required that Defendant use "reasonable procedures to assure maximum possible accuracy" in the publication of Plaintiff's consumer report.

4.      Plaintiff Hernandez applied to rent an apartment in Silver Spring, Maryland in January 2016. In connection with his application for the apartment, The Ashford at Woodlake ("Ashford") requested a consumer report from Defendant. The consumer report provided by Defendant to Ashford was grossly inaccurate and contained a criminal conviction that did not belong to Plaintiff Hernandez. Specifically, Defendant inaccurately reported that Plaintiff had been convicted of marijuana possession in Texas, where Plaintiff has never lived or worked.  In reality, according to the underlying records, these convictions belong to a "Hector David Hernandez-Garcia."  In addition to incorrectly matching Plaintiff with those records, Defendant further compounded its error in two ways.  It erroneously reported the name associated with the records as "Hector David Hernandez" rather than as "Hector David Hernandez-Garcia," which is the name that appears on the actual records and in Defendant's database.  It further reported the same incident twice on the report as two separate items.  This duplicative reporting exacerbated Defendant's misreporting and exaggerated the extent of Plaintiff's non-existent criminal record.

2

As a result of this inaccurate report, Ashford denied Plaintiff Hernandez the opportunity to rent an apartment for himself and his family.  Defendant then refused to correct the report upon receiving Plaintiff's dispute of his report.  Accordingly on behalf of himself and two classes, Plaintiff alleges a claim under 15 U.S.C. § 1681e(b), which required that Defendant use "reasonable procedures to assure maximum possible accuracy" in the publication of Plaintiff Hernandez's consumer report.

5.      Plaintiff Hernandez disputed the inaccuracy in his report, but Defendant refused to remove the inaccurate information. Plaintiff Hernandez accordingly also brings a claim under 15 U.S.C. § 1681i for Defendant's failure to conduct a reasonable reinvestigation of his file.

6.      On behalf of themselves and a class of similarly situated persons, Plaintiffs Hernandez and Williams also allege a claim under 15 U.S.C. § 1681g because Defendant selectively decides which information to provide to consumers that request copies of their consumer reports from Defendant. Section 1681g(a)(2) requires consumer reporting agencies to "clearly and accurately disclose . . . the sources of information" in a consumer report.  15 U.S.C. § 1681g(a)(2). In this instance, Defendant misrepresented to Plaintiffs that the sole source of the criminal public record information in their reports was "Crimcheck America"—a company that does not even exist. The reports do not clearly identify the entity that provided the information.

7.      Defendant withholds the source of the information in order to minimize compliance costs and consumer inquiries directed at it and its valued business partners who furnish the public records to Defendant. Defendant thus deprived Plaintiffs of valuable congressionally mandated information and made it more difficult for Plaintiffs to correct errors relating to the derogatory criminal public records erroneously attributed to them.

3

## JURISDICTION

8.      The Court has jurisdiction under the FCRA, 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

9.      Venue is proper in this Court under 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claim occurred in this judicial district.

## PARTIES

10.     Plaintiffs Williams and Hernandez are a natural persons and a "consumers" as protected and governed by the FCRA.

11.     Defendant CoreLogic, SafeRent, LLC ("SafeRent" or "Defendant") is a Delaware limited liability company that is registered to conduct business and headquartered in Maryland.

12.     Defendant sells tenant background checks on a wholesale basis. Defendant is a "consumer reporting agency," as defined in 15 U.S.C. § 1681(f). It is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports to third parties.

## FACTUAL ALLEGATIONS RELATING TO PLAINTIFF WILLIAMS

13.     In January 2015, Plaintiff Williams applied to rent an apartment with Oella Mill. As part of this process, Plaintiff visited with representatives of Oella Mill and toured an ideal apartment for him and his family.

14.     At this time, Oella Mill offered Plaintiff Williams the apartment subject to a successful completion of a tenant screening, i.e., a background check.

15.     On or around January 3, 2015, Defendant prepared a consumer report regarding Plaintiff Williams and furnished the report to Oella Mill for a fee.

4

16.     The consumer report sold by Defendant contained inaccurate and derogatory information relating to Plaintiff Williams, including that Plaintiff Williams was a convicted sex offender arising from a sexual act with a minor.

17.     Plaintiff Williams is not a convicted sex offender arising from a sexual act with a minor.

18.     Plaintiff never lived or worked in the states where the purported sex offender registration occurred.

19.     Defendant's report contains no information on the conviction which would have served as the basis for Williams being required to register as a sex offender, such as information relating to a conviction for a sex crime.

20.     Defendant's FCRA violations injured Plaintiff Williams by depriving him of an opportunity to rent an apartment and deprived him of information required to be disclosed by the FCRA.  As a result, Plaintiff Williams lost an opportunity to rent an apartment, and suffered monetary damages, and emotional distress.

**FACTUAL ALLEGATIONS RELATING TO PLAINTIFF HERNANDEZ**

21.     In January 2016, Plaintiff Hernandez applied to rent an apartment with Ashford for himself, his wife and their newborn baby.

22.     As part of this process, Plaintiff Hernandez visited with representatives of Ashford and toured an ideal apartment for him and family.

23.     At this time, Ashford offered Plaintiff Hernandez the apartment subject to a successful completion of a tenant screening, i.e., a background check.

24.     On or around January 11, 2016, Defendant prepared a consumer report regarding

5

Plaintiff Hernandez and furnished the report to Ashford for a fee.

25.     The consumer report sold by Defendant contained inaccurate and derogatory information relating to Plaintiff Hernandez, including that Plaintiff Hernandez was convicted of possession of over thirty pounds of marijuana in Texas.

26.     This conviction did not belong to Plaintiff Hernandez, who has never lived or worked in Texas.

27.     Defendant inaccurately reported the name "Hector David Hernandez" as the name associated with the incident.

28.     In reality, according to the underlying records and the records in its own databases, the person associated with the criminal incident is "Hector David Hernandez-Garcia."

29.     By not reporting the full name of the person associated with the incident, Defendant's report failed to report accurately the information contained in the public records and in its own databases.

30.     Further, Defendant's report contains two, separately enumerated "items" that both refer to the same incident in which Hector Hernandez-Garcia (not plaintiff) was charged with marijuana possession. That the two cases are the same is evidenced by the fact that the items have the same "Tracking Number."  Despite the fact that the items were reporting as having the same tracking number, however, the items are reported as being from different jurisdictions ("Brooks" and "79th District Court Falfurrias") as having two different dispositions ("deferred" and "convicted") and the subject of the convictions is reported as being two different races ("Hispanic" and "white").

31.     In reality, the Hector Hernandez-Garcia (not Plaintiff) who was actually associated

with these criminal records was not actually convicted of anything; the original court records indicate his charges were dismissed pursuant to a deferred prosecution agreement.

32.     After Plaintiff Hernandez learned about the inaccurate and derogatory report, Plaintiff Hernandez immediately contacted Defendant and requested a complete copy of his consumer file.

33.     Defendant responded to Plaintiff Hernandez's letter and provided him with a copy of his file on or around January 15, 2016.

34.     After receiving his file, Plaintiff Hernandez again contacted the Defendant to dispute the accuracy of his file, specifically, the two criminal convictions for possession of marijuana.

35.     Defendant, however, failed to remove the inaccurate information from Plaintiff Hernandez's file.  Instead, Defendant sent correspondence dated January 29, 2016 to Plaintiff Hernandez that indicated it had "verified" the criminal records in his consumer file.

36.     Defendant's reinvestigation was unreasonable because Defendant failed to re-examine its own database and to obtain the original court records which pertain to the criminal incidents it reported.  Both Defendant's file disclosure response and its response to Plaintiff's re-investigation request indicate that Defendant never obtained copies of the original court files. Instead, Defendant relied solely on textual summaries of the criminal incidents it reported—the same textual summaries it relied on when preparing the original report.

37.     Had Defendant even carefully examined the records in Defendant's own database, Defendant would have seen that the records it obtained indicated that the name of the person associated with the criminal incident was Hector Hernandez-Garcia, and not Hector Hernandez.

Had Defendant further obtained original court files, the name-match error would have been even more obvious, as would its duplicative reporting and the fact that it erroneously reported the wrong disposition for the charges.

38.     As a result of its unreasonable reinvestigation procedures, Defendant continued to duplicatively report the same inaccurate information relating to someone other than Plaintiff.

39.     Defendant's FCRA violations injured Plaintiff by depriving Plaintiff of an opportunity to rent an apartment and by depriving him of information required to be disclosed by the FCRA.  As a result, Plaintiff lost an opportunity to rent an apartment, and suffered monetary damages, and emotional distress.

## FACTUAL ALLEGATIONS RELATING TO BOTH PLAINTIFFS WILLIAMS AND HERNANDEZ

40.     The reports that Defendant sent to both Plaintiff Williams' and Plaintiff Hernandez's prospective landlords stated that the inaccurate criminal records information they contained were from a "Search Report by Crimcheck America."

41.     At the time Plaintiffs' reports were generated Crimcheck America did not exist.  In separate litigation, Defendant has admitted that its reports are inaccurate in this regard. Specifically, Defendant has stated:

> The "Multistate Criminal Search Report by Crimcheck America" heading on the top of each page of the Multistate Criminal Search Report does not identify any source of information. "Crimcheck America" is not a separate entity from SafeRent. Thus, the records obtained and reported by SafeRent did not originate with Crimcheck America, but instead originated in the jurisdictions identified on the tenant screening report.

*Taylor v. Corelogic SafeRent*, Case No. 1:15-cv-1405 (E.D. Va.), Opp. Mot. Compel at 5-6, at

Dkt. No. 17.

42.     Accordingly, Defendant's reports were inaccurate because they affirmatively misled consumers about the identity of the entity that performed the search which resulted in erroneous records being reported.

43.     As a matter of common practice, Defendant obtains public record information from various governmental agencies, such as a state's department of corrections or motor vehicles. Defendant then combines those records into a single database which it queries in order to generate reports.

44.     Despite the fact that Defendant bears responsibility for the errors in Plaintiff's reports, Defendant sought to distance itself from its erroneous reporting by misleading consumers into believing that in fact a third-party, Crimcheck America, had conducted the search and generated the erroneous results.

45.     Defendant's misidentification of the source of the erroneous information in its reports persisted, even after both Plaintiff Williams and Plaintiff Hernandez sought additional information.

46.     Both Plaintiff Williams and Plaintiff Hernandez contacted Defendant requesting complete copies of their consumer files. Plaintiff Williams requested his file from Defendant in January 2015 and Plaintiff Hernandez requested his file from Defendant in January 2016.

47.     Defendant provided Plaintiff Williams his file disclosure on or around January 7, 2015 and to Plaintiff Hernandez on or around January 15, 2016. The relevant portions of Plaintiff Williams and Hernandez's file disclosures are attached as Exhibits 1 and 2.

48.     In its response to both Plaintiff Williams and Plaintiff Hernandez's consumer file

requests, Defendant had an obligation to disclose the sources of its information. 15 U.S.C. § 1681g(a)(2).

49.     Nonetheless, Defendant falsely misrepresented and/or failed to provide the name of the source(s) of the inaccurate criminal public record information in Plaintiffs' files.

50.     Specifically, Defendant's responses to Plaintiff's file requests both continued to misleadingly state that the criminal search results were from a "Search Report by Crimcheck America."

51.     Aside from the "Search Report by Crimcheck America" there is no other indication of the source of its inaccurate information in Defendant's consumer file responses.

52.     Specifically, Defendant never discloses the underlying entity that furnished the information to Defendant, such as the Texas Department of Corrections. *Dreher v. Experian Info. Sols., Inc.*, 2013 WL 2389878, at *5 (E.D. Va. May 30, 2013) ("Whatever else it might mean, the term 'sources of the information' certainly includes the entity that gave the information to [the consumer reporting agency.]").

53.     Instead, according to Defendant's position in previous litigation, its policy is to identify "the jurisdictions where the public records originated" as the source of the information. *Taylor v. Corelogic SafeRent*, Case No. 1:15-cv-1405 (E.D. Va.), Opp. Mot. Compel at 6, at Dkt. No. 17.

54.     While both Plaintiff Williams' and Plaintiff Hernandez's reports include information on the "jurisdiction" for each "item" reported in the criminal section, there is no indication that the information contained in the "jurisdiction" line of the item represents, or is intended to represent, the source of the information.

55.     Nor could the information contained in the "jurisdiction" line be the source. The information contained in the "jurisdiction" line of Plaintiff Williams' report is simply "CA."

56.     For Plaintiff Hernandez, the information contained in the jurisdiction line for item 1 is simply "79th District Court Falfurrias" and for item 2 it is simply "Brooks."  The state agency of Texas is not mentioned anywhere on the report.

57.     By misidentifying the source of information in its records as Crimcheck America, by omitting the entity who gave the information to Defendant and by providing misleading and incomplete information about the "jurisdiction" where the purported offenses occurred, Defendant fails to clearly and accurately disclose all sources of information in its consumer files.

## FACTS DEMONSTRATING THAT DEFENDANT WILFULLY FAILED TO USE REASONABLE PROCEDURES TO ASSURE MAXIMUM POSSIBLE ACCURACY

58.     If Defendant had reasonable procedures to assure maximum possible accuracy, it could have determined that the information in Plaintiffs' consumer reports belonged to other people with similar names. Defendant's failure to improve its procedures was both knowing and reckless.

59.     Defendant has been sued numerous times for erroneously reporting criminal records that belonged to the wrong consumer.

60.     Defendant's failure to ensure that the consumer's name on the report matches the name on the underlying public records is knowing.  Defendant made an intentional choice to prepare its reports in an over-inclusive fashion, reporting partial name matches as exact matches, while at the same time misleading recipients of the report about the extent to which the identifying information for the person whose record Defendant reported actually matched the identifying

information of the consumer who was the subject of the report. The fact that Defendant knows the records in its files are from people with different names than the subject of the reports is indicative of Defendant's knowledge that its matching criteria lead to inaccuracies, and of its desire to mask the way in which those inaccuracies occur.

61.     In fact, Defendant attempts to protect itself from liability by placing a purported disclaimer on its reports stating that the information contained therein may be inaccurate as a result of its matching criteria. Defendant's reports state:

> WARNING: THE ACCURATE INPUT OF NAME, SSN, DATE OF BIRTH AND ADDRESS IS REQUIRED TO IMPROVE THE RETRIEVAL OF INFORMATION RELATING TO THE APPLICANT, DUE TO THE NATURE OF PUBLIC RECORDS AND/OR THE NATURE OF THE QUERY, (I) LISTINGS ABOVE MAY NOT PERTAIN TO THE INDIVIDUAL APPLICANT IN QUESTION OR (II) THERE WILL BE INSTANCES WHERE NO CRIMINAL INFORMATION IS REPORTED WITH REGARD TO PERSONS WHO IN FACT HAVE CRIMINAL RECORDS.  RECORDS ARE SELECTED ON THE BASIS OF PERSONAL INDENTIFIER(S) INFORMATION MATCH(ES) WITH THE APPLICANT (IF AND WHEN AVAILABLE). THERE IS A WIDE DIVERSITY IN THE TYPES OF CRIMINAL RECORDS MADE AVAILABLE BY VARIOUS JURISDICTIONS AND IN THE CONTENT OF SUCH RECORDS AND DUE TO THE ORGANIZATION OF CRIMINAL RECORDS AND/OR THE NATURE OF THE QUERY, THERE WILL BE INSTANCES WHERE IDENTIFYING INFORMATION APPEARS TO MATCH THE APPLICANT ON WHICH A REPORT IS SOUGHT, WHICH INFORMATION MAY NOT PERTAIN TO THE APPLICANT. YOU SHALL TAKE INDEPENDENT VERIFICATION OF THE INFORMATION CONTAINED IN THIS REPORT TO ENSURE THAT IT PERTAINS TO THE APPLICANT BEFORE YOU TAKE ANY ADVERSE ACTION AGAINST THE APPLICANT. THOUGH INFORMATION CONTAINED IN THIS REPORT IS OBTAINED FROM COURT FILES AND/OR GOVERNMENT PUBLIC RECORD SOURCES, THE ACCURACY OF SUCH INFORMATION IS NOT GUARANTEED.

62.     Through the above disclaimer, by which Defendant unlawfully attempts to shift the burden to ensure accuracy on to its customers, Defendant explicitly acknowledges that there are numerous procedures, such as obtaining original court records, that Defendant could have employed to verify the accuracy of its records. However, Defendant chose not to do so.

63.     First and foremost Defendant could have had a policy in place of only reporting criminal records when the name of the consumer matches the name on the criminal record.

64.     Defendant failed to implement appropriate measures to verify the contents of its reports in order to avoid additional costs. While recklessness is not a matter of compliance with industry standards, Defendant's practices fail to conform with those of many of its competitors. Neither Plaintiff had ever lived or worked in the states from which their convictions were purported to come. Many of Defendant's competitors include an "address history" search in their consumer report preparation process, allowing them to cross-check an individual's criminal history with the individual's residential history in order to ensure that convictions from jurisdictions other than those where the consumer has ever lived can be subjected to additional scrutiny before they are reported.

65.     Defendant also could have had a policy which required it to seek original court records before reporting any criminal record information.  In the case of Plaintiff Williams, the original court files for the actual person convicted of the sex offense would have contained further information allowing Defendant to determine that the David Williams who was the subject of the sex offender registry was a different person than Plaintiff. Rather than just reporting people as sex offenders, Defendant should have had a policy in place to review court files relating to the underlying conviction to ensure that the individual who it was reporting as a sex offender was the same person who was convicted of the criminal act necessitating registration.

66.     In the case of Plaintiff Hernandez, had Defendant obtained the original court files, it would have discovered that both of the dispositions it was reporting were wrong and that they pertained to a single incident associated with someone who had a different name than Plaintiff.

Yet, Defendant failed to implement this manual review and follow-up in order to avoid additional time and expense associated with obtaining original court files.

67.     Defendant also could have further engaged in automatic or manual review to eliminate the duplicative reporting of the same record as two separate incidents.  For example, Defendant could have had a policy of requiring manual review any time that the reported case numbers for two separate items matched one another or that charge dates were the same for separate items. This manual review would have alerted Defendant to the fact that it was reporting the same information twice, and to the fact that it was reporting two different dispositions for the same criminal case.

68.     It is well recognized that the duplicative reporting of the same criminal incident multiple times on the same report is inconsistent with ensuring maximum possible accuracy. Reports containing duplicative entries are misleading because they exaggerate the extent of the consumer's reported criminal record.

69.     The Federal Trade Commission has sued and reached a consent decree with one consumer reporting agency that enjoined the consumer reporting agency for misreporting the same incident multiple times on one report.  *U.S. v. Hireright Solutions, Inc*, No. 12-cv-1313, Stipulated Final Judgment (D.D.C. Aug. 29, 2012).  Numerous courts have also recognized duplicative reporting as inconsistent with reasonable procedures to ensure maximum possible accuracy.  *See Smith v. HireRight Sols., Inc.*, 711 F. Supp. 2d 426 (E.D. Pa. 2010); *Hawkins v. S2Verify LLC*, No. C 15-03502 WHA, 2016 WL 107197 (N.D. Cal. Jan. 11, 2016); *Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188 (W.D. Wash. 2014).

70.     Similarly, the National Association of Professional Background Screeners, of

which Defendant is a member, has warned its customers about the FTC's lawsuit and the dangers of duplicative reporting.

*71.*   It is similarly well-recognized that failing to require actual name matches is inconsistent with reasonable procedures to ensure maximum possible accuracy.  *In re Gen. Info. Servs., Inc.*, No. 2015-CFPB-0028, Consent Order ¶¶ 10-12 (C.F.P.B. Oct. 29, 2015), available at http://files.consumerfinance.gov/f/201510_cfpb_consent-order_general-information-service-inc.pdf.

72.   In addition to the conduct set forth above, Defendant's willful conduct is further reflected by, *inter alia*, the following:

a.   The FCRA was enacted in 1970; Defendant has had nearly many years to become compliant;

b.   Defendant is a corporation with access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

c.   Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

d.   Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

e.   Defendant's violations of the FCRA were repeated and systematic.

73.   At all times relevant hereto, Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued

despite the fact that Defendant and other consumer reporting agencies have been subject to court decisions critical of similar conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports and hiding information from consumers.

**FACTS DEMONSTRATING THAT DEFENDANT'S FAILURE TO ACCURATELY DISCLOSE THE SOURCES OF ITS INFORMATION WAS WILLFUL**

74.     The language of the FCRA requires the clear and accurate disclosure of sources of information in response to consumer file requests (§1681g(a)(2)).

75.     Defendant's initial reports misleadingly identified "Crimcheck America" as an entity which conducted a search and found information about Plaintiffs. This information was simply false, and as indicated by Defendant's sworn discovery responses in the *Taylor* matter, Defendant knew it was false.

76.      Defendant's file disclosure responses failed to accurately identify the source of its information on Plaintiffs. Like its initial responses, Defendant's subsequent file disclosure responses misleadingly identified "Crimcheck America" as the entity which conducted a search and found information about Plaintiffs.  Further, the information contained in the "jurisdiction" line in the items themselves are either not cognizable "entities" ("Brooks" and "CA") and/or as a factual matter are not the entities from which Defendant actually obtained any records.

77.     At all times relevant hereto, Defendant's knew that its reports contained inaccurate information about the source of the criminal records search, and that its file disclosure responses failed to identify the actual sources of its criminal records information.

78.     Unlike others in its industry, who send personalized letters in response to consumer

file disclosures which identify the specific sources of information they published on consumers Defendant chooses to misidentify sources in its original reports (in the hope of deflecting future inquiries) and to minimize the time and expense of responding to consumer file disclosures by simply re-producing the same inaccurate reports.

79.     In addition to the conduct set forth above, Defendant's willful conduct is reflected by, *inter alia*, the following:

a.   The FCRA was enacted in 1970; Defendant has had nearly many years to become compliant;

b.   Defendant failed to maintain a written policy for compliance with §1681g(a)(2) for its employees to follow;

c.   Defendant is a corporation with access to legal advice through its own general counsel's office and outside employment counsel.   Yet, there is no contemporaneous evidence that it determined that its conduct was lawful;

d.   Defendant knew or had reason to know that its conduct was inconsistent with FTC guidance, case law, and the plain language of the FCRA;

e.   Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and

f.   Defendant's violations of the FCRA were repeated and systematic.

80.     Defendant's conduct was willful and carried out in knowing or reckless disregard for consumers' rights under the FCRA. Defendant's conduct was intentionally accomplished through its intended procedures; these procedures have continued despite the fact that Defendant and other consumer reporting agencies have been subject to court decisions critical of similar

conduct; and Defendant will continue to engage in this conduct because it believes there is greater economic value in selling over-inclusive consumer reports and hiding information from consumers.

## CLASS ACTION ALLEGATIONS

81.    Plaintiffs Williams and Hernandez bring this action pursuant to Fed. R. Civ. P. 23 on behalf of the following proposed Class:

> **File Disclosure Class:**  All individuals who requested their consumer file from Defendant in the five years predating the filing of this Complaint and continuing through the date the class list is prepared and whose reports indicate that any of the results contained therein are from a "Search Report by Crimcheck America."

82.    Plaintiff Hernandez brings this action pursuant to Fed. R. Civ. P. 23 on behalf of the following proposed Classes:

> **Misreported Name Class:** All individuals who were the subject of a consumer report furnished by Defendant in the five years predating the filing of this Complaint and continuing through the date the class list is prepared and for whom Defendant reported a criminal offense for which the name reported for the offense in Defendant's published report does not match the name associated with the record Defendant obtained from its source.

> **Multiple Entries Class:** All individuals who were the subject of a consumer report furnished by Defendant in the five years predating the filing of this Complaint and continuing through the date the class list is prepared and for whom Defendant reported the same criminal incident more than once in a report.

83.    The Classes satisfy the requirements of Fed. R. Civ. P. 23(b)(3).

84.    <u>Numerosity</u>: The Classes are so numerous that joinder of all class members is impracticable.  Given the volume of Defendant's business, there are thousands of class members.

85.   Commonality:  This case presents common questions of law and fact, including but not limited to:

a)   Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in misreporting names associated with criminal offenses;

b)   Whether Defendant violated the FCRA by failing to follow reasonable procedures to ensure maximum possible accuracy in reporting criminal incidents multiple times on a report;

c)   Whether Defendant violated the FCRA by misrepresenting sources of the criminal information on its reports;

d)   Whether Defendant violated the FCRA by failing to clearly and accurately disclose the sources of the criminal information on its reports in response to consumer file requests;

e)   Whether Defendant's violations of the FCRA were willful; and

f)   The proper measure of damages.

86.   Typicality: Plaintiffs' claims are typical of the members of the Classes.  The FCRA violations suffered by Plaintiffs are typical of those suffered by other class members, and Defendant treated Plaintiffs consistently with other class members in accordance with its standard policies and practices.

87.   Adequacy: Plaintiffs will fairly and adequately protect the interests of the Classes because they and their experienced and well-financed counsel are free of any conflicts of interest and are prepared to vigorously litigate this action on behalf of the Classes.

88.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Classes predominate over any questions affecting only individual members of the Classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of the FCRA.  Members of the Classes do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claim is small compared to the expense and burden of individual prosecution.  Class certification also will obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices.  Moreover, management of this action as a class action will not present any likely difficulties.  In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all class members' claims in a single forum.

## COUNT ONE: FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
**On behalf of Plaintiff Hernandez individually and the Misreported Name and Multiple Entries Classes**

89.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

90.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished regarding Plaintiff Hernandez. Specifically, Defendant:

　　　a)  Misidentified Plaintiff Hernandez as a drug dealer;

　　　b)  Misidentified the name on the criminal records it reported for Plaintiff

Hernandez as being Hector Hernandez when in reality it was Hector Hernandez-Garcia;

c) Reported the same offense twice on Plaintiff Hernandez's report; and

d) Misreported the disposition of the records it mistakenly tied to Plaintiff Hernandez;

91.     The foregoing violations were negligent and/or willful.   Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff Hernandez and other class members under 15 U.S.C. § 1681e(b).

92.     As a result of Defendant's conduct, Plaintiff Hernandez and Class members suffered actual damages including but not limited to: denial of apartments, damage to reputation, embarrassment, humiliation and other mental and emotional distress.

93.     Plaintiff Hernandez and members of the classes set forth herein are entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**COUNT TWO: FAIR CREDIT REPORTING ACT**
**15 U.S.C. § 1681g**
**On behalf of Plaintiffs individually and the Sources of Information Class**

94.     Plaintiffs reiterate each of the allegations in the preceding paragraphs as if set forth at length herein.

95.     Defendant violated 15 U.S.C. §1681g by failing to clearly and accurately disclose to Plaintiffs (and/or by falsely misrepresenting) the sources of the information within Plaintiffs files as explained herein.

96.     The foregoing violations were willful.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiffs and other class members under 15 U.S.C. § 1681g.

97.     Plaintiffs and the members of the classes set forth herein are entitled to recover statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

## COUNT THREE: FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)
### On Behalf of Plaintiff Williams

98.     Plaintiff Williams reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

99.     Defendant violated the FCRA by failing to maintain and follow reasonable procedures to assure the maximum possible accuracy of the report it published regarding Plaintiff Williams.

100.    The foregoing violation was negligent and/or willful.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681i.  Plaintiff Hernandez is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## COUNT FOUR: FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i
### On Behalf of Plaintiff Hernandez

101.    Plaintiff Hernandez reiterates each of the allegations in the preceding paragraphs

as if set forth at length herein.

102.     Upon receiving Plaintiff Hernandez's s dispute, Defendant violated the FCRA by failing to "conduct a reasonable reinvestigation to determine whether the disputed information is accurate." 15 U.S.C. § 1681i.

103.     The foregoing violation was negligent and/or willful.  Defendant acted in knowing or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681i.  Plaintiff Hernandez is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes, seek the following relief:

    a.  Determining that this action may proceed as a class action under Fed. R. Civ. P. 23(b)(3);

    b.  Designating Plaintiffs as the class representatives for the Classes;

    c.  Designating Plaintiffs' Counsel as counsel for the Classes;

    d.  Issuing proper notice to the Classes at Defendant's expense;

    e.  Declaring that Defendant committed multiple, separate violations of the FCRA;

    f.  Declaring that Defendant acted negligently, willfully, and in deliberate or reckless disregard of the rights of Plaintiffs and the Classes under the FCRA;

    g.  Awarding actual and/or statutory damages as provided by the FCRA;

    h.   Awarding punitive damages;

    i.   Awarding reasonable attorneys' fees and costs and expenses, as provided by the FCRA;

    j.   Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

**TRIAL BY JURY IS DEMANDED**

Respectfully Submitted,
**JAMES WILLIAMS**
**HECTOR HERNANDEZ**

By:  */s/ Kristi C. Kelly*
Counsel

Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of March, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record:

S. Mohsin Reza (Bar No. 19015)
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mohsin.reza@troutmansanders.com
*Counsel for Corelogic SafeRent, LLC*

  /s/ *Kristi C. Kelly*
Kristi Cahoon Kelly, Esq. (No. 07244)
Kelly & Crandall, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail: kkelly@kellyandcrandall.com
*Counsel for Plaintiff*