**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | | |
|---|---|---|
| **JAMES L. WILLIAMS,** *et al.* | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action 8:16-cv-00058-PX** |
| | ) | |
| **CORELOGIC RENTAL PROPERTY** | ) | <u>**REDACTED VERSION**</u> |
| **SOLUTIONS, LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL**</u>

Plaintiffs, James L. Williams and Hector Hernandez ("Plaintiffs"), by counsel, respectfully submit this memorandum in support of their Motion to Compel.

**I.      Overview**

This is a class action against Defendant CoreLogic Rental Property Solutions, LLC ("Defendant") for violating the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*[1] Defendant is a consumer reporting agency ("CRA") that compiles and maintains public records. Defendant sells consumer reports from its database to management companies and landlords who use the reports to make decisions regarding tenants.

Plaintiffs allege that Defendant willfully violated two distinct sections of the FCRA: (1) § 1681e(b), which requires CRAs such as Defendant to follow "reasonable procedures to assure maximum possible of accuracy" whenever it prepares a consumer report concerning an individual to whom the report relates; and (2) § 1681g, which requires consumer reporting agencies to

---

[1] Plaintiffs initially filed this case against Corelogic SafeRent, LLC, who recently changed its name to CoreLogic Rental Property Solutions, LLC.

"clearly and accurately disclose" the "sources of information" in a consumer's file when the consumer requests a copy of their report from Defendant.[2]

Plaintiffs allege that Defendant violated § 1681e(b) because each of the reports it sold regarding Plaintiffs and the class members were grossly inaccurate and were sold by Defendant without meaningful procedures to prevent such an inaccuracies. For example, Defendant provided Plaintiff Williams's potential landlord with a grossly inaccurate report indicating that Plaintiff Williams was a convicted sex offender arising from a sexual act with a minor. Likewise, Defendant inaccurately attributed a conviction to Plaintiff Hernandez for possession of 50 pounds of marijuana even though the underlying conviction was against a person named "Hector David Hernandez-Garcia."

Despite an abundance of notice from its customers, consumers and other lawsuits establishing the inadequacies of its procedures, Defendant continues to utilize lax thresholds for matching consumer data to a rental applicant. These inaccuracies occurred because Defendant's matching procedures are designed to allow "false positives" in order to avoid "false negatives," i.e., a situation where an otherwise accurate record is omitted from the right consumer's report. Defendant continues to utilize lax thresholds because its goal is not to assure "maximum possible accuracy." *See, e.g., Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (explaining that "'assure' means 'make sure or certain: put beyond all doubt,'" and "'maximum' means the 'greatest in quantity or highest degree attainable.'") (quoting Webster's Third New International Dictionary 133, 1396 (1993)). Instead, Defendant's matching criteria is admittedly designed to "strike a nice balance between too much and too little" because some of its

---

[2] Most of the discovery items at issue in this motion involve the § 1681e(b) claim.

"clients want to have it on lockdown and some clients like it loose." (Doyle Depo. 44:16-18; 24:1-2, Apr. 19, 2016.)[3] This policy utterly disregards § 1681e(b).

Defendant's lax matching criteria lead to common errors on consumer reports, including duplicative reporting of criminal records and matching of hyphenated names with names that do not contain a hyphen. For example, the marijuana conviction inaccurately attributed to Plaintiff Hernandez belonged to someone named "Hector David Hernandez-Garcia." Defendant, however, reported the record as belonging to "Hector David Hernandez," which is not the name on the underlying records. Plaintiff Hernandez seeks to represent a class of consumers who were inaccurately subjected to a report by Defendant where the criminal offense for which the name reported for the offense in Defendant's published report does not match the name associated with the record Defendant obtained from its source ("Misreported Name Class").  (FAC ¶ 82.)

In addition to misreporting the name of the offender, Defendant also duplicatively reported the marijuana conviction as two separate "items" on Plaintiff Hernandez's report. (FAC ¶ 30 & Ex. 2.) That the two items refer to same incident is apparent from the face of the report as the two items have the same "Tracking Number," "File Date," "Offense," and "Disposition Date." Duplicative reporting of the same criminal incident is misleading as it exaggerates the extent of the reported criminal history, and it is a well-established violation of § 1681e(b). *See, e.g., Haley v. TalentWise, Inc.*, 9 F. Supp. 3d 1188, 1193 (W.D. Wash. 2014); *Dougherty v. Quicksius, LLC*, 2016 WL 3757056 (E.D. Pa. July 14, 2016). Plaintiff Hernandez therefore seeks to represent a class of people for whom for whom Defendant reported the same criminal incident more than once in a report (the "Multiple Entries Class").

---

[3] (*See also* Chandramohan Depo. 45:12-16, Mar. 31, 2016)("Q: And so you have been involved in communications about reducing false-positives on tenant screening reports; is that fair to say? A: I think the statement doesn't capture the essence. Because if I answer "yes" then it implies that reducing false-positives is the only objective. Our goal is to find the right balance between false-positive and false-negatives.")

The present discovery disputes involve the evidence necessary to establish that Defendant willfully violated §§ 1681e(b) and 1681g and the evidence needed to establish that the class claims satisfy the requirements of Rule 23(a) and 23(b)(3).

## II.   Unresolved Discovery Disputes.

### 1.   Production of Defendant's Databases and Algorithms.

Defendant initially objected to many of Plaintiffs' discovery requests because they seek information pertaining to class certification. Most notably, Defendant refuses to admit that the proposed classes are ascertainable or to take any affirmative steps to identify the class. For example, Plaintiff served an interrogatory asking "[i]f you contend that you are unable to ascertain the 'Multiple Entries Class' as defined in the Amended Complaint, state all the reasons why you are unable to ascertain the class, including each step you performed in an attempt to ascertain the class." (Ex. 1, Pls.' Int. No. 18.) Defendant refused to answer this interrogatory on the grounds that it "is not required to take any proactive steps to attempt to determine class membership for Plaintiffs, and it objects to any request that it do so." *Id.*

Because of Defendant's refusal to answer discovery regarding ascertainability, Plaintiffs are left with no choice but to move to compel production of Defendant's database so that Plaintiffs' database expert can examine the database and demonstrate the class members can be identified.[4] Without access to Defendant's databases, Plaintiffs are unable to obtain the information needed for their motion for class certification and to determine the size and scope of the class. As explained to the Court during the telephone conference on August 2, 2016, numerous courts have ordered production or extraction of a CRAs' databases. *Rodriguez v. Equifax Info. Servs.*, Case No 1:14-

---

[4] RFP No. 13 expressly requests this information. (Ex. 2, RFP No. 13) ("A copy of any database(s) or system(s), or representative sample of data from any database or system, including metadata, maintained or used by You that contains, requests or accesses Background Checks relating to Plaintiffs and/or all individuals upon you have produced Background Checks during the Class Period.")

cv-1142 (E.D. Va.) (Hr'g Trans., Mar. 12, 2015 at 54:3-8) (Jones, J.) ("The Court: If Equifax is not willing to stipulate to ascertainability, then Equifax is going to have to produce for a two-month period to be picked by Mr. Bennett the reports and all of the relevant 1681k information for that same two months so he can go put the numbers together himself.") (excerpt attached as Ex. 3); *see also Manuel v. Wells Fargo*, Case No. 3:14-cv-238 (E.D. Va.) (Mar. 12, 2015 Order) (requiring either the production of full-unredacted class member files or a defendant's stipulation as to typicality and ascertainability) (attached as Ex. 4); *Ridenour v. Multi-Color Corporation*, Case No. 2:15-cv-41 (E.D. Va. at Dkt. No. 134) (requiring the CRA to "produce all potential class-member data for four nonconsecutive, random months during the class period" if the parties could not reach a stipulation regarding the elements of class certification) (attached as Ex. 5); *Campos-Carranza v. Credit Plus, Inc.*, Case No. 1:16-cv-120 (E.D. Va. At Dkt. 41) (ordering a CRA to produce 8,000 consumer reports as part of sampling); *Ceccone v. Equifax Info. Servs., LLC*, 2015 WL 221720, at *1 (D.D.C. Jan. 15, 2015) (ordering 100 consumer reports and other information as part of sample); *Henderson, v. Corelogic, Inc.,* 3:12-cv-97 (E.D. Va. Aug. 13, 2013 at Dkt. 49); *Qualcomm Inc. v. Broadcom Corp.*, 2007 WL 935617, at *4 (S.D. Cal. Mar. 13, 2007) ("On the other hand, the Court finds that Broadcom's alternate request for immediate access to Qualcomm's SR Database will best address the parties' stalemate with regard to the December 5th Order.").

### A.  Overview of the Relevant Data.[5]

████████████████████████████████

████████████████████████████████

████████████████████████████████

---

[5] Information related to Defendant's databases and algorithms were marked as confidential pursuant to the Protective Order in this case. Plaintiffs have redacted this portion of the memorandum due to Defendant's designation of this information as confidential. Pursuant to Local Rule 105.11 and the parties' Protective Order, Plaintiffs will simultaneously file an Interim Motion to Seal.

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████

    ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████

    ████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████  ██████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████ ████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

_____

█ ████████████████████████████████████████████
████████████████████████████████████████)).

**B.  Production of Relevant Algorithms.**



██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

**C.  Plaintiff's Proposal for the Databases and Algorithms:**

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████

■ ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████

■ ██████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████
██████

■ ██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████████████

■ ██████████████████████████████████████████
██████████████████████████████████████████

■ ██████████████████████████████████████████
████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████

## 2. RFP Nos. 4, 5, 6 & 22: Prior Notice and Studies Regarding Defendant's Matching Procedures

In a § 1681e(b) case, a plaintiff must prove two elements: "(1) the consumer report contains inaccurate information and (2) the reporting agency did not follow reasonable procedures to assure maximum possible accuracy." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). In the Fourth Circuit, the plaintiff bears the burden of establishing that the CRA did not follow reasonable procedures. *Dalton*, 257 F.3d. at 416. In an effort to establish that Defendant maintained unreasonable procedures—both as it relates to the individual and class claims—Plaintiffs served several discovery requests seeking to establish that Defendant had knowledge of the problems with false positives; therefore, Defendant acted unreasonably by continuing to use the loose matching criteria that would foreseeably produce inaccuracies. (Ex. 2, RFP Nos. 4, 5, 6 & 22.)[9] As the Federal Trade Commission explained when specifically discussing § 1681e(b):

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report

---

[9] RFP No. 4 requests "All documents concerning internal or external audits, assessments, studies, investigations, or examinations concerning your procedures for ensuring maximum possible accuracy and/or for providing all required information in response to a consumer's request for the consumer's file;" RFP No. 5 requests "All documents containing any research, studies or other empirical analysis you have performed or relied on regarding the accuracy of your matching criteria;" RFP No. 6 requests "All documents containing any proposals you have considered for changing your matching criteria, the content of your consumer file disclosure responses, and/or your procedures with respect to reporting the same criminal incident more than once in a single report;" RFP No. 22 requests "Any document recommending or suggesting any change or problem with duplicative reporting of public records during the Class Period."

users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems.

Federal Trade Commission, 40 Years of Experience with the Fair Credit Reporting Act, an FTC Staff Report with Summary of Interpretations, July 2011. Simply put, consumer complaints, customer complaints and Defendant's studies and research regarding its matching procedures are significant in this case to demonstrate that Defendant maintained unreasonable procedures.

Through the deposition of Defendant's employee Praveen Chandramohan in another case, Plaintiffs learned that such documents *unquestionably* exist, including an "elaborate" study conducted by Defendant regarding the performance of its current matching algorithm and its likelihood to produce "false positives." (Chandramohan Depo., 105:19-106:3, Mar. 31, 2016.) According to Chandramohan, updates concerning the ongoing study were provided to employees on a monthly basis, but Defendant refuses to produce this information. Likewise, Defendant refuses to produce any of the underlying documents regarding its matching procedures—i.e., drafts of the manuals, e-mails exchanging or discussing the procedures and their implementation—other than the *final versions* of the manuals. Among other things, these document would provide relevant and admissible evidence regarding: (1) Defendant's goal of striking the balance between false positives and false negatives, as opposed to assuring maximum possible accuracy, (2) Defendant's intent in implementing its algorithms (customer satisfaction v. FCRA compliance), (3) the absence of any mistake, and (4) available coding that Defendant intentionally ignored.

What happened in this case was not a mistake. It was not a glitch in an otherwise precise procedure. Rather, it was intentional misconduct designed to "strike a balance" between false positives and false negatives based on Defendant's view of what its customers wanted. Yet this consideration has no place under the FCRA, which directs Defendant to base its decisions not on

its perception of its customers' preferences, but on what will most serve the goal of maximum possible accuracy. If Plaintiffs cannot present the actual context of Defendant's knowledge, intent, and the lack of mistake, a jury will not have an accurate factual picture that reflects the reasonableness of Defendant's conduct under the circumstances. For this reason, discovery regarding an FCRA defendant's knowledge is not only discoverable, it is admissible.[10]

Plaintiffs' counsel has moved to compel this exact information in the *Taylor* case involving this Defendant. In that case, the court ordered the Defendant to "produce all studies and audits" regarding its matching procedure and algorithm. (Ex. 9, Hr'g Tr. 14:1-2, Apr. 22, 2016.) In doing so, the Court explained:

> THE COURT: Well, if -- if they contain a description of the policies and procedures, they're responsive whether they're part of an audit or part of a study. My concern is that, you know, you're not being complete in your production.
>
> And if you want to call it a study and part of the study describes what the policies and procedures were in place, and that is a document that is more complete than whatever this policy manual is that apparently isn't complete, according to Mr. Doyle's testimony, then I don't see why you don't think all those other documents need to be produced in order to produce documents showing the policies and procedures in place.
> …
> And I guess to the extent -- and this would relate, I think, to some of the current document requests that are out there, that I am going to require you to produce: Studies, audits, reports, research, whatever relating to anything having to do with the policy that was put in place in October of 2014. And I am not going to put any

---

[10] *See, e.g., Miller v. Equifax Info. Servs., LLC.*, 3:11-CV-01231-BR, 2014 WL 2123560 (D. Or. May 20, 2014) ("Miller also argues Equifax's recklessness was proven by trial evidence that showed Equifax's mixed-file errors were not rare or isolated problems, and, in fact, Equifax's industry 'matching' criteria produced errors in two-to-four million consumer files. As noted, Miller's expert testified about cases in which juries returned verdicts against Equifax based on allegations of mixed files, and Equifax's own representative testified it is Equifax's policy to investigate and to correct files only after a lawsuit is filed."); *Calderon v. Experian Info. Solutions, Inc.*, 2012 WL 2449853, at *4 (D. Idaho June 18, 2012) ("Finally, the Court will order Experian to provide Plaintiff with the number of mixed file disputes it has handled over the last five years. Based on the representations of Experian's counsel as to what it will be feasible to provide, this production will be limited to the number of times Experian was contacted by a consumer, and, as a response, added a 'do not combine' notation to the file, thus flagging the matter as a 'mixed file.'"); *Tamblay v. Equifax Info. Servs.*, Case No. 1:14-cv-00130 (LO/IDD) (E.D. Va. 2014) (*See* Dkt. Nos. 72, 75) (ordering a CRA to provide an answer to an interrogatory asking it to "[i]dentify any research, study, report, memo, email or other document you have generated since January 1, 2011 that regards or discusses criteria or thresholds used to match data to a file and any lawsuits, complaints or alleged problems about that procedure.").

time limit on those. So the studies that have been ongoing since that point in time
to the present.

(*Id.* at 11:5-18; 15:4-12.) The court further ordered the Defendant to produce a list "sufficient to

show each consumer dispute that was received between October 1, 2014, and March 1, 2015," and

the nature of the "complaint by the consumer." (*Id.* at 32:15-16; 33:16.)[11]

Consistent with *Taylor* and the other cases cited above, Plaintiffs request the Court to order

Defendant to provide full and complete responses to RFP Nos. 4, 5, 6 & 22.

### A.  Defendant's Privilege Claim Regarding the Studies.

Both in this case and *Taylor*, Defendant has done everything within its power to shield this

information from Plaintiff's counsel, including refusing to produce "smoking gun" emails, studies

and audit of its matching algorithm. Having lost the relevance and burden battle in *Taylor*,

Defendant now tries to rewrite history by claiming that the information is protected from discovery

under the attorney-client privilege and "self-evaluative" privilege. Defendant's privilege

objections are both factually inaccurate and legally incorrect.

The crux of Defendant's attorney-client privilege argument is that Defendant's in-house

counsel initiated the decision to evaluate Defendant's matching algorithm and, so the argument

goes, the attorney-client privilege protects everything that flowed from the in-house counsel's

decision to evaluate the matching criteria—even communications between non-lawyers.[12] This

assertion is patently false ███████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[11] The parties resolved *Taylor* before the deadline for compliance with the April 22, 2016 order.

[12] A majority of the "privilege" documents do not even involve communications involving an attorney. (*See* Ex. 11,
Aug. 10, 2016 Privilege Log.) To protect these documents, however, Defendant identified e-mails in 2012 and 2013
to create the appearance that decision to evaluate its procedures formed before the customer complaints in 2014.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████ ████████

████████████████████████████████████████████████

████████████████████████████

Defendant's privilege claim not only ignores the facts, but also the law covering information protected by the attorney-client privilege. Most notably, "the attorney client privilege 'applies only to communications made to an attorney in his capacity as legal advisor." *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 411 (D. Md. 2005) (Gauvey, J.).  In other words, "communications by a corporation with its attorney, who at the time is acting solely in his capacity as a business advisor, would not be privileged." *Id.*

Defendant's position regarding the attorney-client privilege is so expansive that it would literally shield a corporation from producing any business documents upon a general claim that the idea ostensibly originated with an attorney. Such an expansive position has been repeatedly rejected by courts, including this Court. *Neuberger Berman*, 230 F.R.D. at 412 (observing "just as all communications from client to attorney are not privileged, neither are all responsive attorney communications privileged."); *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998) ("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda."). In short, the studies and research even if presented to in-house counsel are not privileged because research regarding the effectiveness of Defendant's matching criteria and its

false positives rate cannot possibly constitute legal advice, especially where almost all of communications involve non-lawyers.

### B.  Defendant Waived Any Claim of Privilege.

Under Rule 26 of the Federal Rules of Civil Procedures, Defendant's privilege log was due with its responses. Despite this obligation, Defendant first produced a privilege log on August 10, 2016—almost two months after it served its response to Plaintiff's document requests. When a party refuses to provide a timely privilege log, it forfeits the use of privilege as a basis for its objections. *Mezu v. Morgan State Univ.,* 269 F.R.D. 565, 577 (D. Md. 2010) (Grimm, J.) ("Absent consent of the adverse party, or a Court order, a privilege log (or other communication of sufficient information for the parties to be able to determine whether the privilege applies) must accompany a written response to a Rule 34 document production request, and a failure to do so may constitute a forfeiture of any claims of privilege.").

Defendant not only disregarded its obligation to timely produce a privilege log, its privilege log is so scant that it is utterly useless. (Ex. 12, Aug. 10, 2016 Privilege Log.); *see also* Discovery Guideline 9.c.; *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 264–65 (D. Md. 2008) ("To properly demonstrate that a privilege exists, the privilege log should contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed, or for whom the document was prepared, the purpose in preparing the document, the privilege or privileges asserted with respect to the document, and how each element of the privilege is met for that document.").

Accordingly, the Court should strike Defendant's privilege objection and require production of the documents identified in its untimely log.[13]

### 3. Section 1681g Class Discovery.

The second alleged violation is that Defendant fails to "clearly and accurately" disclose "the sources of information" in response to consumers' requests for their disclosure. Defendant not only omits the sources of the information, i.e., the courthouse or agency that directly provided it the data, but it misleads consumers about the source by indicating the information was from a "Search Report by Crimcheck America"—a company that does not even exist. Plaintiffs have also served several discovery requests targeted at ascertaining the § 1681g class, which is comprised of every person who has requested a copy of their consumer report from Defendant since January 7, 2011.

Defendant has stonewalled every effort of Plaintiffs to determine whether the § 1681g class satisfies the requirements of Rule 23(a). Unquestionably, Defendant knows the number of consumers who have requested a consumer disclosure since January 1, 2011. Nevertheless, Defendant has objected to basic requests, including an admission request as simple as "Admit that you furnished at least 50 consumer disclosures since January 1, 2011, which included the heading 'Search Report by Crimcheck America.'" (*See* Dkt. No. 41-2, Plfs.' Req. Ad. No. 13.)[14] Even though Defendant has stipulated to numerosity, these requests also help establish Rule 23's requirements of ascertainability, commonality and typicality.

---

[13] Defendant's log also indicates that it is withholding the documents based on a "self-evaluative" privilege. This privilege does not exist, nor was it included as an objection at the time Defendant provided its responses. (*See, e.g.*, Ex. 2, RFP No. 4.) ("SafeRent objects to this Request to the extent that it seeks documents and information protected by the attorney-client privilege, the attorney-work product doctrine, or any other applicable privileges."). Thus, Defendant waived this "privilege."

[14] Defendant's answers to Plaintiffs' requests for admission blatantly violate Rule 36 of the Federal Rules of Civil Procedure, which provides that a party "party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Fed. R. Civ. P. 36(a)(4).

To alleviate any burden regarding the § 1681g class discovery, Plaintiffs proposed that Defendant: (1) provide the total number of disclosures furnished since January 7, 2011; (2) provide the total number of file disclosures furnished since January 7, 2011, that contained at least one criminal record; (3) stipulate that each file disclosure furnished since January 7, 2011, contained the heading "Search Report by Crimcheck America;" and (4) stipulate that Defendant never disclosed the underlying governmental agency or courthouse on any file disclosure since January 7, 2011. (Ex. 7.) Defendant refuses to even entertain these stipulations on the grounds that they were not contained in Plaintiffs' three-page Pre-Motion Letter. (Ex. 8.)

Alternatively, Plaintiffs would accept a sample of disclosure so long as Defendant agrees that the sample is typical and representative of the class. Under this proposal, Defendant would agree to produce disclosures for a four-month timeframe selected by Plaintiffs' counsel. Similar methods have been recently ordered by other courts. *Ridenour*, Case No. 2:15-cv-41 (E.D. Va. at Dkt. No. 134) (requiring the CRA to "produce all potential class-member data for four nonconsecutive, random months during the class period" if the parties could not reach a stipulation regarding the elements of class certification) (attached as Ex. 5); *Campos-Carranza*, Case No. 1:16-cv-120 (E.D. Va. At Dkt. 41) (ordering a CRA to produce 8,000 consumer reports for four nonconsecutive months).

If Defendant refuses to agree to either of these compromises, Plaintiffs respectfully request the Court to order Defendant to produce all of the disclosures as requested by RFP No. 10, which asks Defendant to produce copies of all of the disclosures since January 2011. (*See* Ex. 2.)

### 4. Int. No. 11: Discovery Regarding Defendant's Net Worth.

Plaintiff also served a number of discovery requests seeking the Defendant's net worth. (Ex. 1, Int. No. 11) ("State your net income and net worth for 2015 and 2016.") Defendant's net

worth is directly relevant to Plaintiff's FCRA claims because Plaintiffs have alleged punitive damages. Less than six months ago, the United States District Court for the Eastern District of Virginia ordered Defendant to respond to similar discovery regarding its net worth in *Taylor*. *Taylor*, Case No. 1:15-cv-1405 (TSE/JFA) (E.D. Va. Mar. 4, 2016 at Dkt. No. 26.). In that case, Defendant raised the same objection to production of its net worth as it does in this case, namely that it should be permitted to withhold any financial information until trial. The court rejected Defendant's argument, and Defendant complied with the court's order by producing a balance sheet reflecting its net worth. Production of this same balance sheet would resolve this issue.

*Taylor* is consistent with the overwhelming majority of cases on this issue, including decisions from this Court and the Fourth Circuit. *Cloud v. G.C.A. Int'l, Inc.,* 2006 WL 2189698, at *8 (D. Md. Aug. 1, 2006) ("The financial status, or net worth, of a defendant is a proper factor to consider when determining the amount of punitive damages."). The Fourth Circuit has recently stated the relevance of this evidence in an FCRA case:

> We also conclude that a smaller award would not "serve as a meaningful deterrent" to BB & T. *Kemp*, 393 F.3d at 1365. As the court noted in *Bach*, "a punitive damages award must remain of sufficient size to achieve the twin purposes of punishment and deterrence." 486 F.3d at 155 (quotations and citations omitted). This is not to say that a $400,000 punitive damages award would be appropriate in this case, as it was in *Bach*. But reducing the punitive damages award of $80,000 here would leave little deterrent or punitive effect, particularly given BB & T's net worth of $3.2 billion. See, e.g., *TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 462 n. 28 (1993) (plurality opinion) (noting that it is "well-settled" that a defendant's "net worth" is a factor that is "typically considered in assessing punitive damages").

*Saunders v. Branch Banking & Trust Co. of VA*, 526 F.3d 142, 154-155 (4th Cir. 2008).

Defendant's proposed alternative is also not feasible. If Plaintiffs waited until a jury's finding of willfulness, there would be no way to serve any additional discovery, and Plaintiffs would be required to blindly accept any information provided by Defendant after the close of

discovery. For this reason, the "overwhelming majority of federal courts to have considered the question have concluded that a plaintiff seeking punitive damages is entitled to discovery information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages." *U.S. v. Matusoff Rental Co.*, 204 F.R.D. 396, 399 (S.D. Ohio 2001) (collecting cases).[15] Plaintiffs respectfully request the Court to adopt the majority approach as Defendant's proposed plan would delay the ultimate resolution of this case and inconvenience the parties' preparation and presentation of the evidence at trial.

### 5.   Int. No. 13: Contention Interrogatory Regarding Class Certification.

Rule 33(a)(2) provides that "[a]n interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33. Moreover, Rule 33(a)(2) specifically states that an "interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time." *Id*. Contention interrogatories "are the favored method of exploring a party's legal contentions, not depositions." *E.E.O.C. v. Freeman*, 288 F.R.D. 92, 102 (D. Md. 2012). This type of request "can be most useful in narrowing and sharpening the issues, which is a major purpose of discovery." Fed. R. Civ. P. 33 advisory committee's note (1970).

To ensure that Plaintiffs are not blindsided by any factual issues not addressed during discovery, Plaintiff has served a contention interrogatory asking Defendant to "identify and

---

[15] *Turnage v. Clarity Services, Inc.*, 2015 WL 5092695 *3 (E.D. Va. July 22, 2015) (Young, J.) ("[C]ourts have recognized that 'a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial and without making a prima facie showing that he is entitled to recover such damages.'"); *Platcher v. Health Professionals, Ltd.*, 2007 WL 2772855, at *3 (C.D. Ill. Sept. 18, 2007) (citing 6 James Wm. Moore et al., *Moore's Fed. Prac. Civ.* Section 26.41[8][c] (3d ed. 2007) ("When the complaint asserts a claim that will sustain an award of punitive damages if proven, a majority of federal courts permit discovery of the net worth and financial condition of the defendant, without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.").

describe all evidence to support your denial that the Plaintiffs' action does not meet any specific element of Rule 23 sufficient to certify the case as a class action." (Ex. 1, Int. No. 13.) This interrogatory is targeted at narrowing any factual contentions, *if any*, regarding the requirements of Rule 23. Defendant refuses to answer this interrogatory even though it asked nearly identical interrogatories to Plaintiffs.[16] Instead, Defendant stands on its objection, which states as follows:

> SafeRent objects to this Interrogatory as compound and as compromising many discrete Interrogatories across all three putative classes. SafeRent objects to this Interrogatory on the basis that it exceeds the numerical limit allowed by the parties' Supplemental Discovery Order. SafeRent objects to this Request on the basis that it is premature, including because no motion for class certification has been filed such that SafeRent can identify the ways in which Plaintiffs have failed to satisfy the factors set forth under Rule 23. SafeRent further states that the burden to satisfy Rule 23 is Plaintiffs' burden alone, and SafeRent accordingly objects to any attempt to require it to affirmatively disprove the factors set forth under Rule 23.

(Ex. 1, Int. No. 13.)

Defendant's objections are improper. Plaintiffs are not required to wait until class certification to learn what facts that Defendant will use to oppose Plaintiff's motion for class certification. This interrogatory does not seek to shift the burden on Defendant to prove the element of Rule 23. Rather, the interrogatory seeks to flush out any surprise factual issues that Defendant may raise by affidavit or other evidence to oppose class certification, such as a material change in its matching algorithm during the class period.

A recent opinion from the Fourth Circuit is instructive on this issue. In that case, a CRA successfully argued to the Fourth Circuit that the plaintiff's § 1681e(b) class claim did not satisfy the typicality requirement because its procedure for collection of the records varied from class member to class member depending on whether the judgment was in a Virginia general district court or circuit court. *Souter v. Equifax Info. Servs.*, 498 Fed. Appx. 260, 264 (4th Cir. 2012). In

---

[16] Defendant's interrogatory provides "[s]tate all bases to support your contention that the 'file disclosure' class is capable of certification under the factors set forth in Fed. R. Civ. P. 23(a) and 23(b)."

reversing the district court's order granting class certification, the Fourth Circuit explained that "Souter's claim simply varies from any potential class plaintiff with a circuit court judgment, and from many potential plaintiffs with general district court judgments, depending on the date of the judgment." *Id.*

If Defendant intends to raise similar factual issues, Plaintiff is entitled to seek discovery to rebut Defendant's contentions. Nothing in the Federal Rules of Civil Procedure limits Rule 33(a)(2)'s application in class actions and numerous courts have rejected the position asserted by the defendant. For example, in *Yingling v. eBay, Inc.*, the plaintiffs moved to compel discovery of their contention interrogatory that sought the legal and factual basis for defendant's contention that "the Class cannot be properly certified for any reason." 2010 WL 373868 (N.D. Cal. Jan. 29, 2010). In response, defendant objected "on the grounds that it prematurely provides plaintiffs with an advance preview of its opposition to the expected motion for class certification." *Id.* at 3. In rejecting the defendant's argument, the court stated "[h]ere, the discovery sought relates to class certification. And the contention interrogatory is proper." *Id.*; *see also Lindell v. Synthes USA*, 2013 WL 3146806, at *5 (E.D. Cal. June 18, 2013); *Kartman v. State Farm Mut. Auto. Ins. Co.*, 247 F.R.D. 561, 566 (S.D. Ind. 2007). Accordingly, Plaintiffs request the Court to strike Defendant's objections and order Defendant to respond to Plaintiffs' contention interrogatory.

### 6.   Defendant Failed to Comply with the Court's Order Regarding ESI.

Plaintiffs first served their document requests on April 12, 2016. After granting Defendant a series of extensions, Defendant provided its responses to Plaintiffs' document requests on May 24, 2016. (*See* Ex. 2.) At this time, Defendant did not produce any responsive documents or the Electronic Discovery Log specifically requested by Plaintiffs' counsel. On July 14, 2016, Defendant produced the Electronic Discovery Log produced thus far in this case. (Ex. 12, Def.'s

Electronic Discovery Log.) The Electronic Discovery Log does not comply with the Court's Discovery Order, which requires a party "to demonstrate that [its ESI] search was effectively designed and efficiently conducted" by maintaining "detailed time records to demonstrate what was done and the time spent doing it, for review by an adversary and the Court, if requested." (Mar. 15, 2016 Discover Order at Dkt. No. 10-1.)

Defendant's log is so scant that it makes it impossible to understand what was done and the time spent doing it. Most notably, Defendant provides no indication of any of the custodians searched or the terms by Defendant to conduct the searches. Instead, Defendant's log provides several generic entries such as: "[d]evelop list of search terms to apply across custodians," "[a]ttend team conference regarding electronic discovery review process," [r]eview and code documents in connection with electronic document review." (*See* Ex. 12.) There is simply no way to tell from these entries whether the search was "effectively designed and efficiently conducted," because Defendant's log leaves out even the most basic information.[17]

On multiple occasions, Plaintiffs raised this issue with Defendant, including during a meet and confer telephone conference on July 14, 2016, and in the Plaintiffs' Pre-Motion Letter. Defendant has ignored these requests and failed to update its deficient log, which amounts to no log whatsoever. Thus, Plaintiffs request the Court to order Defendant to fully comply with the Discovery Order, including by providing: (1) the custodians who were searched as part of its ESI review as part of its initial production, (2) the search terms used, (3) a list of each database, e-mail account or other system that was search, and (4) the identification of the employees or other individuals who assisted in the ESI search and any steps taken by those individuals.

---

[17] Defendant's log raises serious concerns about the efficiency of its search and its withholding of potentially responsive documents considering that Defendant has produced less than 90 total documents in this case, most of which represent the consumer reports it furnished regarding Plaintiffs. Based on its production of a mere 90 documents, it is hard to imagine how Defendant spent 175 hours as part of its ESI search.

**7.   Defendant Has Not Complied with Rule 34.**

Defendant's responses to Plaintiffs' document requests disregard the requirements of Rule 34 of the Federal Rules of Civil Procedure. For a majority of its responses, Defendant indicates that it "will produce non-privileged documents" in response to the request. (Ex. 2, RFP Nos. 2-6, 8-9, 11.) Defendant's responses are entirely inappropriate and violate Rule 34. As one court explained when confronted with this precise conduct:

> In numerous instances, the FBI responded to plaintiffs' requests by stating "Responsive documents, if any, will be produced..."
>
> Such responses to plaintiffs' requests for discovery are unacceptable. In effect, defendants have sought to arrogate to themselves an indefinite extension of time in which they may respond to plaintiffs' discovery requests.

*Alexander v. F.B.I.*, 1997 WL 1106579, at *1 (D.D.C. Dec. 22, 1997).[18]

On multiple occasions, Plaintiffs asked Defendant to amend its response to confirm it produced all documents responsive to the particular request. Plaintiffs have not only directly asked Defendant to update its responses, but Plaintiffs specifically cited this as an issue in their Pre-Motion Letter to the Court. (Dkt. No. 41.) Yet, Defendant refuses to amend its answers to Plaintiffs' First Set of Document Requests. Accordingly, Plaintiff respectfully requests the Court to order Defendant to amend its "will produce non-privileged" documents responses to confirm that: (1) all of its responsive documents have been produced, (2) no such documents exist, or (3) specific documents are being withheld. Otherwise, Plaintiffs are left uncertain as to whether all responsive documents have been produced by Defendant.

---

[18] *See also Association of American Physicians and Surgeons, Inc. et al. v. Hillary Rodham Clinton*, 837 F. Supp. 454 (D.D.C. 1993) ("The proper response by the government would have been to file its incomplete information and move to enlarge time for filing its complete answer, with an estimate of how much time would be needed. Instead, the government decided it would file an incomplete answer and then supplement it whenever it pleased, effectively divesting this court of control over the discovery process and ensuring that during the briefing process on the motion to compel the government would continue to produce dribbles and drabs of information at its convenience."); *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 541 (D. Kan. 2006).

## III.  Conclusion

For the foregoing reasons, the Plaintiffs respectfully request the Court to grant this Motion in its entirety.

Respectfully submitted,
**JAMES L. WILLIAMS and HECTOR HERNANDEZ**

By:  _/s/ *Kristi C. Kelly*_____
Counsel

Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com

E. Michelle Drake (MN Bar No.0387366)*
John G. Albanese (MN Bar No.0395882)*
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of August, 2016, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record:

S. Mohsin Reza (Bar No. 19015)
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mohsin.reza@troutmansanders.com

*Counsel for Corelogic SafeRent, LLC*

Ronald I. Raether, Jr.
TROUTMAN SANDERS LLP
5 Park Plaza Ste 1400
Irvine, CA 92614
Telephone: (949) 622-2722
Facsimile: (949) 622-2739
ronald.raether@troutmansanders.com

Timothy J. St. George
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
Facsimile:  (804) 698-601 3
tim.stgeorge@troutmansanders.com

  /s/ *Kristi C. Kelly*
Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com
*Counsel for Plaintiff*