IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES L. WILLIAMS, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. PX 16-58 |
| | * | |
| CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC, | * | |
| Defendant. | * | |

******

# MEMORANDUM OPINION

Pending in this FCRA case is a motion to compel filed by Plaintiffs against Defendant CoreLogic Rental Property Solutions, LLC. ECF No. 47. The issues have been fully briefed and a hearing was held on October 18, 2016. For the following reasons, Plaintiffs' motion to compel is granted in part and denied in part.

## I.   Background

Plaintiffs bring this action against Defendant CoreLogic Rental Property Solutions, LLC ("CoreLogic," "RPS," or "Defendant") for its alleged violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* CoreLogic is a consumer reporting agency that compiles and maintains files on consumers. It then sells these consumer reports to management companies and landlords who use them to make decisions regarding tenants. The reports sometimes contain errors. A "false positive" error occurs when a consumer report contains an item, such as a criminal conviction, which is not attributable to the individual with whom the particular credit report relates. For example, CoreLogic's report on Plaintiff Hector Hernandez allegedly showed that he was convicted of marijuana possession when that crime was actually committed by a different

individual named "Hector David Hernandez-Garcia." A "false negative" error occurs when a negative item should have been attributed to a consumer but was not.

The two named plaintiffs, on behalf of themselves and three potential classes,[1] allege that CoreLogic violated several FCRA provisions. They bring a claim under 15 U.S.C. § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy" of the information in a consumer report about whom the report relates. They also bring a claim under 15 U.S.C. § 1681g(a)(2), which requires consumer reporting agencies to "clearly and accurately disclose . . . the sources of information" in a consumer report. Additionally, Plaintiff Hernandez brings a claim under 15 U.S.C. § 1681i for CoreLogic's alleged failure to conduct a reasonable reinvestigation of his file. ECF No. 13 at 3.

On August 15, 2016, Plaintiffs filed a Motion to Compel Discovery. ECF No. 47. Plaintiffs generally argue that CoreLogic has refused to produce "the evidence necessary to establish that Defendant willfully violated §§ 1681e(b) and 1681g and the evidence needed to establish that the class claims satisfy the requirements of Rule 23(a) and 23(b)(3)." ECF No. 47-1 at 4. At the time this motion was filed, the unresolved discovery disputes included (1) the

---

[1] Plaintiffs describe the three proposed classes as follows:

> **File Disclosure Class:** All individuals who requested their consumer file from Defendant in the five years predating the filing of this Complaint and continuing through the date the class list is prepared and whose reports indicate that any of the results contained therein are from a "Search Report by Crimcheck America."
>
> **Misreported Name Class:** All individuals who were the subject of a consumer report furnished by Defendant in the five years predating the filing of this Complaint and continuing through the date the class list is prepared and for whom Defendant reported a criminal offense for which the name reported does not match the name associated with the record Defendant obtained from its source.
>
> **Multiple Entries Class:** All individuals who were subject of a consumer report furnished by Defendant in the five years predating the filing of this Complaint and continuing through the date the class list is prepared and for whom Defendant reported the same criminal incident more than once in a report.

ECF No. 13.

production of CoreLogic's databases and algorithms; (2) evidence suggesting CoreLogic's prior notice of reporting inaccuracies and studies regarding matching procedures; (3) discovery related to whether Plaintiffs' § 1681g class satisfies Fed. R. Civ. P. 23's requirements; (4) discovery regarding CoreLogic's net worth; (5) Plaintiffs' contention interrogatory served upon CoreLogic regarding class certification; (6) CoreLogic's alleged failure to comply with this Court's Order regarding ESI; and (7) CoreLogic's alleged failure to comply with Fed. R. Civ. P. 34. On October 18, 2016, the parties filed a Consent Order resolving many of their outstanding discovery disputes. ECF No. 78. What remains are CoreLogic's undisclosed documents and communications related to CoreLogic's internal review of its matching process.[2]

As early as 2012, CoreLogic began reviewing its matching logic and algorithms to help it identify issues related to potential consumer report inaccuracies, i.e., the prevalence of false positives or false negatives. In 2014, CoreLogic conducted a review of its matching processes, resulting in certain changes to its matching procedures in late October 2014 (internally referred to as "Phase I" of the review). It engaged in another review of its matching processes in 2015 and 2016. CoreLogic refuses to produce studies, communications, audits, or reports relating to its review of its matching process, arguing that such documents are irrelevant, or otherwise protected from being discovered by the attorney-client privilege and self-evaluative privilege. It provided Plaintiffs with a privilege log on August 10, 2016, and by Letter Order dated October 6, 2016, provided the Court with the undisclosed documents for an *in camera* review.

## II.     Standard of Review

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

---

[2] The parties agreed to stay the issue of whether CoreLogic should be required to answer Plaintiffs' contention interrogatories regarding the propriety of class certification until CoreLogic produces the undisclosed documents at issue in this Memorandum Opinion.

3

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"The burden is on the party resisting discovery to explain specifically why its objections, including those based on irrelevance, are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG Indus. Automation Sys.*, LLC, 675 F. Supp. 2d 598, 601 (D. Md. 2009). Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); *Erdmann v. Preferred Research Inc.*, 852 F.2d 788, 792 (4th Cir. 1988) ("The scope and conduct of discovery . . . are within the sound discretion of the district court.").

### III.    Analysis

#### A.    **Purportedly Irrelevant Documents**

As a general rule, parties may obtain discovery regarding any non-privileged matter that is relevant to a claim or defense. *See* Fed. R. Civ. P. 26(b)(1). Relevant information need not be admissible at trial to be discoverable so long as it is proportional to the needs of the case. *See id.* CoreLogic refuses to produce the documents listed on its privilege log because it argues the documents are not relevant to Plaintiffs' individual claims under § 1681e(b). ECF No. 54 at 24–26. Specifically, it states that "an objective standard is used to assess whether a credit reporting agency has in place and followed reasonable procedures to assure that its credit reports achieve maximum possible accuracy." *Id.* at 24 (quoting *Villaflor v. Equifax Info.*, No. C-09-00329 MMC, 2010 WL 2891627, at *1 (N.D. Cal. July 22, 2010) (internal quotation marks omitted).

4

Accordingly, the reasonableness of the procedures used by CoreLogic must be assessed by reference to the procedures themselves, which are what define the relevant inquiry, and not any internal commentary on those procedures. CoreLogic also argues that the documents in question relate to changes to its matching procedure implemented both before and after the named Plaintiffs' reports were generated, and thus do not directly relate to the particular consumer reports in question. ECF No. 54 at 22–26.

        The Court disagrees. Plaintiffs have alleged, *inter alia*, that CoreLogic failed to maintain reasonable procedures in compliance with § 1681(e). "The determination regarding the reasonableness of a credit reporting agency's procedure is normally a question for trial unless the reasonableness or unreasonableness of the procedure is beyond question." *Jones v. Equifax, Inc.*, No. 3:14CV678, 2015 WL 5092514, at *4 (E.D. Va. Aug. 27, 2015) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010) (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004))) (internal quotation marks omitted). Internal commentary regarding CoreLogic's knowledge of a matching problem, the steps it took to fix that problem, and the solutions it considered is relevant to whether CoreLogic's chosen procedures were, or are, objectively reasonable. In other words, the objective standard requires courts to evaluate reasonableness by analyzing what a reasonably prudent person would do under the circumstances, and by weighing the burden of further action against the potential harm of creating misleading information. *Cain v. Trans Union LLC*, No. C04-1779L, 2006 WL 328409, at *3 (W.D. Wash. Feb. 9, 2006) (cited by *Villaflor*, 2010 WL 2891627, at *1). To apply this standard, the Court is guided by evidence of the circumstances presented to CoreLogic and the decisions it made under those circumstances.

Additionally, Plaintiffs are required to prove CoreLogic violated the FCRA either negligently under 15 U.S.C. § 1681o or willfully under § 1681n. Willfulness under the FCRA encompasses both knowing and reckless conduct. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57–61 (2007). Documents demonstrating the information CoreLogic had at the time it considered alternate procedures to limit the number of consumer report errors, as well as the feasibility of alternative procedures it had at its disposal, are relevant to whether CoreLogic knowingly or recklessly violated the FCRA.

Further, if CoreLogic believed that the documents related to its internal review of its matching process were irrelevant, it should not have produced them on its privilege log. The first consideration in responding to written discovery requests is whether the information or documents are "relevant to the party's claim or defense." Fed. R. Civ. P. 26. After determining that information or documents are relevant, the next consideration is whether those documents are privileged. *Westfield Ins. Co. v. Carpenter Reclamation, Inc.*, 301 F.R.D. 235, 248 (S.D.W. Va. 2014). Accordingly, and as defense counsel knows,[3] when a party produces a privilege log, information on that log is presumed to be "otherwise discoverable," i.e., relevant. Fed. R. Civ. P. 26(5); *Maria Del Socorro Quintero Perez, CY v. United States*, No. 13CV1417-WQH-BGS, 2016 WL 362508, at *1 (S.D. Cal. Jan. 29, 2016).[4] For these reasons, the Court rejects CoreLogic's threshold objection that discovery of its "internal commentary" is irrelevant.

B.     **The Attorney-Client Privilege**

---

[3] *See* ECF No. 54 at 34–35.

[4] As Rule 26's Advisory Committee notes to the 1993 Amendment explain, if a party believes some of the documents requested are irrelevant, it should make this objection at the outset and produce the unprivileged documents. The court will then rule on whether the withheld documents are irrelevant.

The purpose of the attorney-client privilege is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Because the privilege interferes with the truth seeking process and "is in derogation of the public's right to every man's evidence," it is "not favored by the federal courts" and "is to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355 (4th Cir. 1984). The attorney-client privilege applies if:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (quoting *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358–59 (Mass. 1950)). The burden is on the proponent of the privilege to demonstrate its applicability, *id.*, which may require the submission of affidavits, deposition transcripts, or other evidence. *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008); *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 230 F.R.D. 398, 410 (D. Md. 2005) ("The party withholding the document, of course, must provide that the context by way of evidence, not just argument"). The Court also notes that the time it takes the Court to review this extrinsic evidence on a document-by-document basis is extensive. "It should go without saying that the court should never be required to undertake *in camera* review unless the parties have first properly asserted privilege/protection,

then provided sufficient factual information to justify the privilege/protection claimed for each document, and, finally, met and conferred in a good faith effort to resolve any disputes without court intervention." *Victor Stanley, Inc.*, 250 F.R.D. at 266 (D. Md. 2008).

Here, CoreLogic claims the attorney-client privilege for each of the 362 undisclosed documents on its privilege log. The Court's review of the privilege log revealed that, of the 362 documents, an attorney is only referenced in approximately ten percent of the identified documents. CoreLogic has submitted affidavits from two of its attorneys, Jennifer L. Sarvadi and Rebecca Kuehn, listing the specific communications in which they were a party. Both the attorneys generally attest that "[e]ach of those communications was either sent by me for the purpose of providing legal advice . . . , or were sent to me for the purpose of requesting legal advice." ECF Nos. 54-7 & 54-8. But each expended little effort to explain why each document was privileged.

The Court then reviewed each undisclosed document and discovered that several do not contain any input from counsel, let alone legal advice. In other instances, a string of emails simply ends with the conversation being forwarded to an attorney. Merely forwarding and email to an attorney does not make the document privileged where the information at issue was not gathered for a primarily legal purpose. *See F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 71 (D. Md. 1998) ("What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda."); *U.S. Postal Serv. v. Phelps Dodge Ref. Corp.*, 852 F. Supp. 156, 163 (E.D.N.Y. 1994).

The Court did, however, find a handful of documents protected by the attorney-client privilege because they contain client confidences and appear to be drafted for the purpose of seeking legal advice. The Court will therefore deny Plaintiffs' motion to compel on the basis of the attorney-client privilege with respect to the following communications and attachments, identified by the date and time that the communication was sent:

> (1) June 27, 2012, 22:09; (2) July 3, 2012, 14:25; (3) April 16, 2013, 1:20; (4) April 17, 2013, 19:32; (5) June 10, 2014, 13:57; (6) June 11, 2014, 19:45 (produce entire document except email sent by Rebecca Kuehn on June 11, 2014 at 11:52); (7) December 10, 2014, 16:22; (8) March 19, 2015, 22:06 (produce all content in document except emails to and from Rebecca Kuehn); (9) November 12, 2015, 18:17; (10) November 23, 2015, 14:55; (11) December 9, 2015, 15:07; (12) January 29, 2016, 0:41; (13) February 29, 2016, 22:27; (14) March 21, 2016, 18:18.

CoreLogic also asserts the attorney-client privilege to protect the undisclosed communications between *non*-attorneys regarding the company's matching and false positive issues, given "the inherently legal nature" of these problems. ECF No. 54 at 29. "Communications among non-attorneys in a corporation may be privileged if made at the direction of counsel, to gather information to aid counsel in providing legal services . . . . [I]n analyzing communications created at the direction of in house counsel, courts must be wary that the involvement of the attorney is not being used simply to shield corporate communications from disclosure." *Sky Angel U.S., LLC v. Discovery Commc'ns, LLC*, 28 F. Supp. 3d 465, 486 (D. Md. 2014) (quoting *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 80 (S.D.N.Y. 2006)).

In *In re CV Therpeutics, Inc. Securities Litigation*, a case upon which CoreLogic relies, the Northern District of California determined that documents created in the context of an "inherently legal process," or presenting "a circumstance virtually necessitating legal representation," may be protected by the attorney-client privilege even though the documents were created by non-attorneys. No. C-03-3709 SI (EMC), 2006 WL 2585038 (N.D. Cal. Aug.

30, 2006). Under these circumstances, a request for legal advice is implied. The court emphasized, however, that "the Court looks to the context of the communication and content of the document to determine whether a request for legal advice is in fact fairly implied, taking into account the facts surrounding the creation of the document and the nature of the document." *Id.* at *4; *accord Neuberger Berman*, 230 F.R.D. at 409.

CoreLogic argues that it competes at the "highly-regulated intersection of housing law, the FCRA, and privacy laws." ECF No. 54 at 27. Any proposed changes to the company's matching logic or search algorithms must involve legal counsel to ensure that those changes comply with the myriad of state and federal laws. The legal department's participation in CoreLogic's matching review process is therefore implied. Consequently, Corelogic argues that the communications and documents created during Corelogic's internal matching logic review were made at the direction of corporate counsel. *Id.* at 28–29. In their affidavits, CoreLogic's attorneys as well as its Vice President of Analytics, David Diehl, reiterate that "the process of assuring accuracy for 'matching' criminal records to the data provided by the property manager, landlord, or leasing agent necessarily implicates issues of legal compliance to ensure that RPS's processes are reasonably designed to assure maximum accuracy." ECF Nos. 54-7, 54-8, 54-9.

CoreLogic's justification is belied by the content of the undisclosed documents and the facts surrounding circumstances of their creation. The undisclosed documents show that CoreLogic reviewed its matching logic for accuracy to continue maximizing its profits and remain relevant in its market. Nowhere in the documents created and distributed among non-attorneys is there any indication that the primary purpose of conducting an internal review into the company's matching logic was to comply with state or federal law, or to seek legal advice. *In re CV Therapeutics, Inc. Sec. Litig.*, 2006 WL 2585038, at *1–3 (explaining that documents sent

10

to non-attorneys are not privileged when counsel is only carbon copied or sent the document secondarily). Accordingly, the remaining non-attorney documents and communications are not protected under the attorney-client privilege.

C.     **The Self-Evaluative Privilege**

CoreLogic also argues that the documents provided on its privilege log are protected by the self-evaluative privilege, also called the "self-critical analysis" privilege. Specifically, it argues that these documents relate to its self-evaluation of the its "matching logic to assure that its processes were achieving maximum possible accuracy." ECF No. 54 at 30.

The original purpose of the self-critical analysis privilege was to encourage candor when parties sought to improve their own procedures in providing care to patients in the health care context. *Etienne v. Mitre Corp.*, 146 F.R.D. 145, 147 (E.D. Va. 1993). Three criteria must be met in order for this privilege to apply:

> First, the information contained in the document must result from an internal investigation or review conducted to evaluate or improve a party's procedures or products; second, the party must originally have intended that the information remain confidential and demonstrate "a strong interest in preserving the free flow of the type of information sought"; finally, the information contained in the documents "must be of a type whose flow would be curtailed if discovery were allowed."

*Etienne*, 146 F.R.D. at 147 (E.D. Va. 1993) (*Dowling v. American Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir.1992)).

The Fourth Circuit Court of Appeals has not expressly recognized the privilege, let alone cited it with approval and applied it to prevent the disclosure of documents. *See In re Digitek Prod. Liab. Litig.*, No. MDL 1968, 2010 WL 519860, at *5 (S.D.W. Va. Feb. 10, 2010) (*Deel v. Bank of America, N.A.*, 227 F.R.D. 456, 458 n.4 (W.D. Va. 2005)). Moreover, courts seem reluctant to extend the privilege beyond the circumstances under which the privilege was first

recognized in *Bredice v. Doctor's Hospital, Inc.*, 50 F.R.D. 249 (D.D.C.1970). In that case, the court held that a decedent's administratrix in a medical malpractice suit could not obtain discovery of the minutes and reports of a hospital staff review meeting. The court recognized that the long-term public benefits of improved health care outweighed the needs of the litigant seeking discovery, and, thus, should not be sacrificed without a showing of good cause. *Id.* at 251. In fact, all of the cases CoreLogic cites in support of this privilege found it to apply in situations involving internal reviews that could produce public health and safety benefits. *See* ECF No. 54 at 30–31.[5]

Even if the self-evaluative privilege exists in the Fourth Circuit and applies here, CoreLogic's internal investigations and communications thereto fail to meet the standard espoused in *Etienne*. The third criterion of the test requires that the information contained in the documents be of a type whose flow would be curtailed if discovery were allowed. This "typically requires the court to weigh the public interest served in preventing disclosure of confidential internal reviews against a plaintiff's need for the material to prove its case." *Etienne*, 146 F.R.D. at 147.

Here, CoreLogic argues that if its internal review of its matching logic were subject to discovery, "candid communications among employees about matching issues will be stifled and the review process will be hampered due to the omnipresent threat of litigation." ECF No. 54 at 31. Corelogic also asks the Court to consider "the critical role that background screening companies play in avoiding false negatives, which pose a grave risk to RPS's customers and the

---

[5] Citing *Brem v. DeCarlo, Lyon, Hearn & Pazourek, P.A.*, 162 F.R.D. 94 (D. Md. 1995) (medical peer review); *Tyndall v. Berlin Fire Co.*, No. CIV. ELH-13-2496, 2014 WL 7363830 (D. Md. Dec. 23, 2014) (documents related to investigation by Maryland Institute for Emergency Medical Services Systems); *Granger v. Nat'l R.R. Passenger Corp.*, 116 F.R.D. 507 (E.D. Pa. 1987) (documents related to Amtrak investigation into an accident). At the October 20, 2016 hearing, the Court asked CoreLogic's counsel to direct it to a case analogous to the one before this Court where the self-evaluative privilege was applied to prevent disclosure of documents. Counsel was unable to do so.

general public." *Id.* While CoreLogic may have a strong desire to avoid law suits arising out of the accuracy of its matching logic, it has many other incentives to conduct internal reviews. *See Dowling v. Am. Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir. 1992) (finding the self-evaluative privilege inapplicable when the defendant had alternative reasons to conduct voluntary safety reviews other than to avoid litigation).[6] In fact, as discussed *supra*, the company's purpose of conducting the matching reviews centered on addressing client and consumer complaints after they received inaccurate reports. Therefore, the Court finds that CoreLogic's reviews will rarely, if ever, be curtailed simply because they may be subject to discovery. *See, e.g.*, *Witten v. A.H. Smith & Co.*, 100 F.R.D. 446, 452 (D. Md. 1984); *O'Connor v. Chrysler Corp.*, 86 F.R.D. 211, 217 (D. Mass. 1980) (both observing that deterrents to candid self-evaluation may exist wholly apart from the threat of disclosure in litigation).

Furthermore, information otherwise subject to the privilege "must be disclosed whenever it is material to the adversary's case, and where the information therein cannot be obtained through alternative sources." *In re Air Crash at Charlotte, N.C. on July 2, 1994*, 982 F. Supp. 1052, 1055 (D.S.C. 1995) (quoting 2 Stephen A. Saltzburg et al., *Federal Rules of Evidence Manual* 637 (6th ed. 1994)). Here, CoreLogic's internal audits, studies, and internal commentary will assist Plaintiffs in their efforts to prove their FCRA claims. *See, e.g.*, *Hardy v. N.Y. News, Inc.*, 114 F.R.D. 633, 640 (S.D.N.Y. 1987) ("In resolving the tensions between the opposed

---

[6] The Ninth Circuit in *Dowling* provides the following example:

> One need only view a few automobile advertisements to recognize that manufacturers perform safety tests not required by law not only because of the threat of products liability suits for design defects, but because a reputation for safety renders a product more marketable. It is noteworthy that automobile and other manufacturers continue to conduct such reviews despite the infamous cost-feasibility memorandum that subjected Ford Motor Company to enormous punitive damages in *Grimshaw v. Ford Motor Co.*, 119 Cal. App. 3d 757, 174 Cal. Rptr. 348 (1981). *See* David G. Owen, *Problems in Assessing Punitive Damages Against Manufacturers of Defective Products*, 49 U. Chi. L. Rev. 1, 16–19 (1982).

*Dowling v. Am. Hawaii Cruises, Inc.*, 971 F.2d 423, 426 (9th Cir. 1992).

needs of disclosure of confidentiality we are reminded that the discovery rules are to be accorded broad and liberal treatment, particularly where proof of intent is required." *Gray v. Board of Higher Educ., City of New York*, 692 F.2d 901, 904 (2d Cir. 1982) (citing *Herbert v. Lando*, 441 U.S. 153, 170–75 (1979)). More importantly, the Court is hard-pressed to find another way Plaintiffs would be able to obtain this information.

Accordingly, the documents on CoreLogic's privilege log are not protected by the self-evaluative privilege.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel is granted in part and denied in part. CoreLogic will be ordered to produce all of the documents presented on its privilege log except those determined to fall under the attorney-client privilege, discussed *supra*. As to Plaintiffs contention interrogatory regarding class certification, Plaintiffs' motion is denied as moot. The parties agreed to revisit this issue after Defendant produces its unprivileged documents. As to all other discovery disputes listed in Plaintiffs' motion, the Motion is denied as moot. These remaining discovery issues were resolved by the parties by a Consent Order dated October 18, 2016. ECF No. 78. A separate order will follow.

 10/26/2016                                           /S/
Date                                                  Paula Xinis
                                                      United States District Judge