**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | | |
|---|---|---|
| JAMES L. WILLIAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:16-cv-00058-PX |
| | ) | |
| CORELOGIC RENTAL PROPERTY | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND MEMORANDUM IN SUPPORT [UNOPPOSED]

Plaintiffs James Williams and Hector Hernandez, individually and on behalf of all other similarly situated individuals, move for preliminary approval of the proposed Class Action Settlement.  For the reasons discussed in the accompanying memorandum, Plaintiffs James L. Williams and Hector Hernandez, on behalf of themselves and all others similarly situated, respectfully move this Court for entry of an Order:

a.   Finding that the Federal Rules of Civil Procedure and all other requirements for certification of a settlement class have been satisfied, and certifying the Settlement Class;

b.   Preliminarily approving the Settlement Agreement as fair, reasonable, and adequate;

c.   Finding that the class notice procedure set forth below satisfies the requirements of due process and applicable law and procedure;

d.   Setting a date for the hearing at which the Court will finally determine the fairness, reasonableness, and adequacy of the proposed settlement (the "Final Fairness Hearing");

e.      Appointing Plaintiffs as class representatives for the Settlement Class;

f.      Appointing Berger & Montague, P.C. and Kelly & Crandall, PLC as Class Counsel

to the Settlement Class; and

g.      Appointing American Legal Claims Services, LLC as Settlement Administrator.

Defendant CoreLogic Rental Property Solutions, LLC ("Defendant") does not oppose this

motion.  For good cause shown, Plaintiffs' motion should be granted.

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

BACKGROUND ....................................................................................................... 1

    I.     Procedural History ....................................................................................... 1

    II.    The Settlement Agreement ........................................................................... 3
            A.  Overview of Terms ............................................................................. 3
            B.  Form of Notice .................................................................................... 4
            C.  Opt-Outs and Objections .................................................................... 5
            D.  Attorneys' Fees, Costs, and Class Representative Service Award ...... 5

ARGUMENT ............................................................................................................ 6

    I.     The Settlement Class Meets the Requirements of Rule 23 .......................... 7
            A.  The Requirements of Rule 23(a) are Satisfied ................................... 7
            B.  The Requirements of Rule 23(b)(3) are Satisfied ............................. 10

    II.    The Settlement is Appropriate for Preliminary Approval ......................... 11
            A.  The Settlement is Fair ...................................................................... 12
            B.  The Settlement Terms Are Adequate And Reasonable ..................... 13

    III.   The Proposed Notice And Notice Plan Satisfy Rule 23 ............................ 17

CONCLUSION ....................................................................................................... 18

## TABLE OF AUTHORITIES

**Cases**

*Alston v. Equifax Info. Servs., LLC*, 2014 WL 6388169 (D. Md. Nov. 13, 2014)......................15

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................6, 7, 11

*Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305 (7th Cir. 1980) .........................................6

*Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307 (D. Or. 2008) .....................................14

*Bach v. First Union Nat. Bank*, 149 F. App'x 354 (6th Cir. 2005) .............................................14

*Brady v. Thurston Motor Lines*, 726 F.2d 136 (4th Cir.1984)........................................................7

*Brown v. Transurban USA, Inc.*, 318 F.R.D. 560 (E.D. Va. 2016) .............................................16

*Campos-Carranza v. Credit Plus*, No. 1:16-cv-00120 (E.D. Va.) (LMB/MSN) .........................9

*Ceccone v. Equifax Info. Servs.*, LLC, No. 1:13-cv-01314 (D.D.C.) (KBJ)................................9

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).................................................14

*City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041 (1st Cir. 1996)...................12

*Clark v. Trans Union, LLC*, 2017 WL 814252 (E.D. Va. Mar. 1, 2017)......................................9

*Conley v. First Tenn. Bank,* Case No. 1:10-cv-1247 (E.D. Va. 2010)..........................................9

*Dalton v. Capital Associated Indus.*, 257 F.3d 409 (4th Cir. 2001) ...........................................15

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006).............................................................8

*Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466 (W.D. Va. 2011)...........................................16

*Dreher v. Experian Info. Solutions, Inc.*, 2014 WL 2800766 (E.D. Va. June 19, 2014)..............9

*In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211 (W.D. Ok. 2010) ..................14

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004) .................................................10

*Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)..................................................14

*Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)..................................10

*Hayes v. Delbert Servs. Corp.,* No. 3:14-cv-00258 (JAG) (E.D. Va.) (Jan. 30, 2017 Order,
    Dkt. 193) .................................................................................................................9

*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211 (D. Md. 1997).........................................11

*Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825 (E.D.N.C. 1994)..............12

*Jeffreys v. Commc'ns Workers of Am.,* 212 F.R.D. 320 (E.D. Va. 2003)....................................10

*Jenkins v. Equifax Info. Servs., LLC,* No. 15-cv-443, ECF No. 30 (E.D. Va., Apr. 27, 2016) ..................................................................................... 9, 15

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) .................................. 6, 11, 12

*Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34 (4th Cir. 1978) ....................................... 7

*Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138 (4th Cir. 2001) ...................................... 10

*In re MicroStrategy Sec. Litig.*, 148 F. Supp. 2d 654 (2001) ..................................... 13

*In Re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379 (D. Md. 1983) ............. 12

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) ............................ 13

*Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551 (D. Md. 2006) .................... 8

*Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356 (D. Md. 2004) ....................... 11

*Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492 (D. Md. 1998) ............................. 8

*Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483 (D.C. Cir. 1992) ....................... 18

*Ridenour v. Multi-Color Corp.,* No. 2:15-cv-00041 (MSD/DEM) (E.D. Va.) .................. 9

*S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) ...................................... 6

*Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47 (2007) ............................................... 16

*Shaver v. Gills Eldersburg, Inc.*, 2016 WL 1625835 (D. Md. Apr. 25, 2016) ............... 6

*Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665 (D. Md. 2013) ............. 11, 12, 16

*Stanley v. Cent. Garden and Pet Corp.*, 891 F. Supp. 2d 757 (D. Md. 2012) ............... 7, 8

*Stokes v. RealPage, Inc.*, No. 15-cv-1520, ECF No. 51 (E.D. Pa. June 30, 2017) ........... 15

*Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99 (W.D. Va. 2000) ............................ 10

*Thorn v. Jefferson–Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ......................... 10

*Tsvetovat, v. Segan, Mason, & Mason, PC,* No. 1:12-cv-510 (E.D. Va.) (TSE) ............. 9

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338 (2011) .............................................. 8

*Watkins v. Hireright, Inc.,* 2016 WL 5719812 (S.D. Cal. Sept. 30, 2016) ..................... 15

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ................................................. 6

## Statutes

Title 15, United States Code

Section 1681, *et seq.* .........................................................................*passim*

Title 28, United States Code

Section 1715 ................................................................................................................. 3

**<u>Rules</u>**

Federal Rules of Civil Procedure

Rule 23, *et seq.* ........................................................................................... *passim*

Plaintiffs James Williams and Hector Hernandez and Defendant CoreLogic Rental Property Solutions, LLC, have reached a class action settlement to resolve Plaintiffs' claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681g(a), alleging that Defendant failed to "clearly and accurately" disclose the sources of information in response to a consumer's file disclosure. The Settlement provides for automatic payments of $132 for 2,264 Class Members. This amount is within the FCRA's statutory damages range of $100 to $1,000 and is in line and for some cases greater than recoveries in other settlements for similar claims. The proposed settlement also provides for non-monetary relief, and it has an appropriately narrow release for Class Members. The settlement was reached with the assistance of well-respected mediator Rodney Max after more than a year of hard-fought, adversarial litigation with substantial discovery. The settlement is a fair and reasonable resolution of the 15 U.S.C. § 1681g(a) claims at issue and should be approved. For the reasons discussed in this memorandum, Plaintiffs request that the Court preliminarily approve the Settlement, direct notice to the class, and schedule a final fairness hearing.

## BACKGROUND

### I.     Procedural History

Defendant produces tenant screening reports for landlords on prospective tenants. Plaintiff Williams filed this case on January 7, 2016, alleging that Defendant had violated the FCRA. (ECF No. 1). On March 24, 2016, Plaintiffs Williams and Hernandez filed their First Amended Class Action Complaint ("FAC"), which is the operative complaint in this case. (ECF No. 13.)

In the FAC, both Plaintiffs Williams and Hernandez alleged that Defendant violated 15 U.S.C. § 1681g(a)(2) of the FCRA, which requires that upon request consumer reporting agencies "clearly and accurately" disclose "the sources of information" in the consumer's file. Plaintiffs alleged that Defendant's disclosures falsely state that Plaintiffs' reports were from a "Search

Report by Crimcheck America," which is a tradename of a predecessor entity to Defendant.  On behalf of themselves and a class of similarly situated consumers, Plaintiffs sought statutory damages of $100 to $1,000 for Defendant's alleged willful violation of § 1681g(a)(2) of the FCRA. 15 U.S.C. § 1681n.  (FAC ¶ 94-97.)

Plaintiffs also alleged that Defendant had violated 15 U.S.C. § 1681e(b) by generating inaccurate reports and Plaintiff Hernandez alleged that Defendant violated 15 § U.S.C. 1681i for failing to reinvestigate his dispute.  Defendant answered the FAC, and the case proceeded to discovery.  Discovery was contentious, and the parties engaged in numerous meet-and-confer sessions and had to seek court intervention on multiple occasions to resolve disputes including fully briefing a motion to compel related to documents withheld by Defendant.  (ECF No. 79). Plaintiffs conducted five depositions, including four current employees and one former employee of Defendant.  Defendant deposed both Plaintiffs.  Throughout the course of the litigation, Defendant produced thousands of documents related to the claims at issue and produced a sample of its database, which Plaintiffs' expert analyzed.  Plaintiffs likewise responded to Defendant's discovery requests.  Defendant also served subpoenas on various third parties.

Toward the end of the discovery period, the parties agreed to mediate with Rodney Max of Upchurch Watson White & Max.  Mr. Max is a well-respected mediator who has significant experience with FCRA claims.  The case was stayed pending the mediation.  (ECF No. 99.)  Prior to the mediation, the parties exchanged more information and prepared detailed mediation statements.  On June 15, 2017, the parties attended mediation in Dallas, Texas and were able to reach an agreement to resolve the claims in the case.  The mediation lasted a full day.  The parties agreed to a class-wide resolution of the claims under 15 U.S.C. § 1681g(a)(2).  Plaintiffs Hernandez and Williams resolved their claims under § 1681(e)(b) and § 1681i on an individual

basis.  Through subsequent negotiations, the Parties reached a class-wide resolution formalized in the Settlement Agreement ("SA"), attached to the Declaration of John G. Albanese as Ex. 1.

## II.      The Settlement Agreement

### A.      Overview of Terms

The Settlement Class is defined as:

> All persons residing in the United States of America (including its territories and Puerto Rico) who, from March 24, 2014 through the date when the Court enters its Preliminary Approval Order, made a request pursuant to Section 609(a) of the FCRA [15 U.S.C. § 1681g(a)] for a copy of their consumer file and received a response containing at least one criminal record in their file, and whose file disclosure also contained one or more of the following phrases: "Statewide Criminal Search Report by Crimcheck America"; "Multistate Criminal Search Report by Crimcheck America"; or "Sex Offender Search Report by Crimcheck America."  The File Disclosure Settlement Class does not include Defendant's officers, directors, and employees; Defendant's attorneys; Named Plaintiffs' attorneys; and any Judge overseeing or considering the approval of the Settlement together with members of their immediate family and any judicial staff.

(SA ¶ 4.1.1).  Based on Defendant's records, there are 2,264 Class members.

Defendant will pay $595,000 as part of a settlement fund.  (*Id.* ¶ 5.1.)  Pursuant to the Settlement, Class members who do not opt out will receive at least $132.  (*Id.* ¶ 4.3.2.)  If approved by the Court, the remainder of the fund will go to attorneys' fees and expenses, Plaintiffs' service awards, and administration costs.  (*Id.* ¶ 5.3.) Should any funds remain after the close of the check negotiation period, Defendant may seek to recover the costs paid to administer the settlement and sending the notice required by the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715.  (*Id.* ¶ 4.2.5.)  Any remaining funds after that step will be donated to the to the designated charitable *cy pres* recipient, Public Justice, a non-profit entity that focuses on consumer issues.  (*Id.* ¶ 5.3.1.) The Settlement also reflects an agreement by Defendant to an injunction to cease using the phrases "Statewide Criminal Search Report by Crimcheck America," Multistate Criminal Search Report by Crimcheck America," or "Sex Offender Search Report by Crimcheck America" in the criminal

record section of file disclosures sent to consumers in response to a copy of a request for their consumer file. (*Id.* ¶ 4.3.1.)

In exchange for the monetary and non-monetary relief, Settlement Class Members will release claims that they have under 15 U.S.C. § 1681g(a) of the FCRA or state law equivalents. (*Id.* ¶ 6.1.1). The Settlement Class Member release does not include claims under any other section of the FCRA. For instance, claims related to the accuracy of reports under 15 U.S.C. § 1681e(b) or to Defendant's response to consumer disputes under 15 U.S.C. § 1681i are not released.

### B. Form of Notice

After seeking competitive bids from industry-leading class administrators, the Parties have selected American Legal Claims Services ("ALCS") as the settlement administrator and ALCS has agreed to cap administration costs at $14,000. (*Id.* ¶ 4.2.2). The Parties agreed to the form of notice attached to the Settlement Agreement as Exhibit D (the "Notice"). All Settlement Class Members will be sent the Notice via first-class U.S. mail at their last-known address, as updated by the U.S. Postal Service's National Change of Address System and any other appropriate proprietary software the Settlement Administrator utilizes. (*Id.* ¶ 4.2.3). The Notice contains detailed information about the settlement, including the information required by Fed. R. Civ. P. 23(c)(2)(B). (*Id.* ¶ 4.2.3). Further, the Notice will inform Settlement Class Members how to obtain additional information about the settlement, including the URL for the Settlement Website and a toll-free telephone number to contact the Settlement Administrator, and deadlines by which to take action should they so choose. (*Id.*)

The Settlement Administrator will establish and administer the Settlement Website referenced in the Notice, which will contain the Notice and copies of relevant pleadings (*e.g.*, the FAC, the Settlement Agreement, other submissions related to the settlement and copies of any

orders issued by the Court in connection with the settlement). The website will be updated on a regular basis throughout the settlement process.  (*Id.* ¶ 4.2.3).  Defendant will also comply with the notice requirements of CAFA. (*Id.* ¶ 4.2.4.)

### C.    Opt-Outs and Objections

The Notice will inform all Settlement Class Members of their right to opt out of or object to the settlement and of the associated customary deadlines.  (*Id.* ¶ 4.2.3.)  Settlement Class Members who choose to opt out must send a written notice to the Settlement Administrator stating the individual's name and address and desire to opt out of the settlement.  (*Id.* ¶ 4.4.5.1.)  To object, a Settlement Class Members must file a statement of objection with the Clerk of Court and concurrently mail a copy to the Settlement Administrator.  (*Id.* ¶ 5.3.)  The statement must state the case name and number; list the Class Member's name, address, phone; state the basis and explanation of the objection; be signed by the Settlement Class Member; and state whether the Settlement Class Member intends to appear at the final approval hearing, with or without counsel. (*Id.*)

### D.    Attorneys' Fees, Costs, and Class Representative Service Award

The Settlement Agreement contemplates Plaintiffs' Counsel petitioning the Court for attorneys' fees and costs in an amount not to exceed $277,152.  (*Id.* ¶ 5.3.)  Plaintiffs' Counsel may also petition the Court for a $2,500 service award for each of the Plaintiffs. (*Id.*)  Plaintiffs' Counsel will formally petition the Court for these amounts fourteen (14) days prior to the objection deadline and will post a copy of the motion papers on the Settlement Website so that Settlement Class Members are able to review them prior to the deadline to object to the settlement. (*Id.* ¶ 5.3.). Approval of the Settlement Agreement is not contingent upon the full amount of any requested fees or service award being approved.

## **ARGUMENT**

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)). Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources. As the court in *Stone* observed:

> In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.

749 F. Supp. at 1423 (quoting *Armstrong v. Bd. of Sch. Dirs.*, 616 F.2d 305, 313 (7th Cir. 1980)).

Settlement approval of a Rule 23 class action settlement is a two-step process. At the first stage, the court determines whether the settlement is "within the range of possible approval." *Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 WL 1625835, at *2 (D. Md. Apr. 25, 2016). The court also conducts a "preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b)." *Id.* at *2 (D. Md. Apr. 25, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). If the settlement is preliminarily approved, a final approval hearing will be scheduled and notice will be sent to the proposed settlement class regarding the settlement. *Id.* "At the second stage, following the final fairness hearing, final approval will be granted if the parties establish that a settlement is fair and adequate." *Id.*; *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).

For the reasons set forth below, the Court should: (1) preliminarily approve the Parties' proposed settlement, (2) certify the Settlement Class for settlement purposes only, (3) approve the

class notice for distribution, (4) appoint Plaintiffs as Class Representative and Plaintiffs' Counsel as Class Counsel, and (5) set a date for the final approval hearing.

## I.     The Settlement Class Meets the Requirements of Rule 23

To certify a class, the court must find that the prerequisites of Rule 23(a) are met, and that the case falls within at least one of the categories listed in Rule 23(b). The same standards generally apply where certification is sought for settlement purposes only, although issues of manageability at trial are not relevant.  *Amchem Prods., Inc.* 521 U.S. at 620.

### A.     The Requirements of Rule 23(a) are Satisfied

Under Rule 23(a), one or more persons may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

There is no "mechanical test" for numerosity, *Kelly v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978), but courts in this Circuit have held that joinder is impracticable where a class includes hundreds of potential claimants, as well as where there are fewer than 100 members. *See, e.g.*, *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir.1984) (certifying class of 74). Here, numerosity is met because there are 2,264 Settlement Class Members.

The commonality, typicality, and adequacy of representation elements "are similar and overlapping." *Stanley v. Cent. Garden and Pet Corp.*, 891 F. Supp. 2d 757, 770 (D. Md. 2012). "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," and that their common complaint "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one

of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338, 350 (2011).  There are a number of common issues in this matter, including: (1) whether Defendant's inclusion of the tradename "Crimcheck America" on its disclosures violated the FCRA and (2) whether any violations of the FCRA were willful.  These questions can be resolved by common proof and therefore commonality is satisfied.

Similarly, a class meets the typicality requirement where the claims of the Class Members are "fairly encompassed by the class representative's claims." *Stanley*, 891 F. Supp. 2d at 770. In other words, the "representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).  Here, the claims of Named Plaintiffs are typical of those of the absent settlement Class Members, *i.e.*, Class Members all received a disclosure that contained at least one criminal or sex offender record and that listed the phrase "Crimcheck America."  Plaintiffs' claims thus rest on the same legal and factual issues as those of the Class Members. That is the hallmark of typicality. *See Deiter*, 436 F.3d at 466.

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class. That protection involves an analysis of two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class. *See*, *e.g., Mitchell-Tracey v. United Gen. Title Ins.*, 237 F.R.D. 551, 558 (D. Md. 2006) (citing *Peoples v. Wendover Funding, Inc.*, 179 F.R.D. 492, 499 (D. Md. 1998)).

Plaintiffs fairly and adequately represent the interests of the Settlement Class.  Plaintiffs have been actively involved in the litigation, have no interests antagonistic to the interests of the

Settlement Class, and are unaware of any actual or apparent conflicts of interest between Plaintiffs and the Settlement Class.  (Declaration of Kristi Kelly ("Kelly Decl.") ¶¶ 11.)

Proposed Class Counsel are highly qualified.  Berger & Montague ("Berger") is experienced in complex class action litigation and consumer litigation in general.  (Albanese Decl., Ex. 2.)  Berger was founded in 1970, and has been concentrated on representing plaintiffs in complex class actions ever since.  (*Id*.)  The firm has been recognized by courts for its skill and experience in handling major complex litigation.  (*Id.*)  Lead counsel from Berger, E. Michelle Drake, has worked extensively on FCRA class actions, and John G. Albanese, also from Berger, has concentrated his practice on FCRA litigation as well.  (*Id.*).

Plaintiffs' counsel from Kelly & Crandall, PLC have extensive collective experience in both consumer protection and class action litigation, having been involved in numerous, large consumer class actions where they have been found to be suitable class counsel.  (Kelly Decl. ¶¶ 1-10); *see also Dreher v. Experian Info. Solutions, Inc.*, 2014 WL 2800766, at *2 (E.D. Va. June 19, 2014) ("Dreher's counsel is well-experienced in the arena of FCRA class action litigation."); *Clark v. Trans Union, LLC*, No. 3:15CV391, 2017 WL 814252, at *14 (E.D. Va. Mar. 1, 2017); *Jenkins v. Equifax Info. Servs., LLC,* No. 3:15-cv-443 (E.D. Va.); *Campos-Carranza v. Credit Plus,* No. 1:16-cv-00120 (E.D. Va.) (LMB/MSN); *Hayes v. Delbert Servs. Corp.,* No. 3:14-cv-00258 (JAG) (E.D. Va.) (Jan. 30, 2017 Order, Dkt. 193); *Ridenour v. Multi-Color Corp.,* No. 2:15-cv-00041 (MSD/DEM) (E.D. Va.); *Tsvetovat, v. Segan, Mason, & Mason, PC,* No. 1:12-cv-510 (E.D. Va.) (TSE)*; Conley v. First Tenn. Bank,* No. 1:10-cv-1247 (E.D. Va. 2010); *Ceccone v. Equifax Info. Servs.,* LLC, No. 1:13-cv-01314 (D.D.C.) (KBJ).

**B.      The Requirements of Rule 23(b)(3) are Satisfied**

The Settlement contemplates provisional class certification under Rule 23(b)(3). If the elements of Rule 23(a) are satisfied, then a class action may be certified so long as the Court finds that certain other requirements under Rule 23(b)(3) are met: (1) questions of law or fact common to Class Members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3)'s predominance inquiry focuses on whether the proposed classes are "sufficiently cohesive to warrant adjudication by representation." *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 362 (4th Cir. 2004); *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 142 (4th Cir. 2001). This criterion is normally satisfied when there is an essential, common factual link between all class members and the defendants for which the law provides a remedy. *Talbott v. GC Servs. Ltd. P'ship*, 191 F.R.D. 99, 105 (W.D. Va. 2000) (citing *Halverson v. Convenient FoodMart, Inc.*, 69 F.R.D. 331 (N.D. Ill. 1974)). And, predominance exists where the resolution of class members' individual claims depends on examining common conduct by a defendant. *Jeffreys v. Commc'ns Workers of Am.,* 212 F.R.D. 320, 323 (E.D. Va. 2003) (finding predominance because class members' claims were based on same acts by defendant and the determinative "question in each individual controversy" was common).   The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims are common, and relate to alleged standardized procedures. *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct."). Nothing more is required to satisfy predominance.

Second, "[t]he superiority requirement ensures that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Thorn v. Jefferson–*

*Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006) (internal quotations omitted). The factors to be considered here in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in one forum; and (4) manageability.[1] *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997); *accord Newsome v. Up To Date Laundry, Inc.*, 219 F.R.D. 356, 365 (D. Md. 2004).

A class action in this case is superior to other available methods for the fair and efficient adjudication of the case because a class resolution of the issues described above outweighs the difficulties in management of separate, individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the damage claims that would be available to individuals. Moreover, Rule 23(c) permits individual class members to opt out and pursue their own actions separately if they believe they can recover more in an individual suit. Class adjudication is superior here. *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 678 (D. Md. 2013) (finding superiority in FCRA settlement).

Accordingly, because the requirements of Rule 23(a) and 23(b)(3) have been met, the Court should conditionally certify the Settlement Class for settlement purpose.

## II.    The Settlement is Appropriate for Preliminary Approval

The primary concern for the Court in reviewing a proposed class settlement is to ensure that the rights of class members have received sufficient consideration in settlement negotiations. *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 158. At the preliminary approval stage, the Court must make a determination as to the fairness, reasonableness, and adequacy of the settlement terms. *See*

---

[1] As mentioned above, a trial court may disregard management issues in certifying a settlement class. *Amchem Prods. Inc.*, 521 U.S. at 620.

Fed. R. Civ. P. 23(e)(2).   The Fourth Circuit has bifurcated this analysis into consideration of the fairness of settlement negotiations and the adequacy of the consideration to the class.   *In re Jiffy Lube*, 927 F.2d at 158-59.   However, at the preliminary approval stage, the Court need only find that the settlement is within "the range of possible approval." *Horton v. Merrill Lynch, Pierce, Fenner & Smith,* 855 F. Supp. 825, 827 (E.D.N.C. 1994) (citing *In re Mid-Atlantic Toyota Antitrust Litig.,* 564 F. Supp. 1379, 1384 (D. Md. 1983)). This settlement warrants approval.

### A.      The Settlement is Fair

A class settlement is fair if it "was reached as a result of good faith bargaining at arm's length, without collusion." *Jiffy Lube*, 927 F.2d at 159. In the Fourth Circuit, courts should consider the following factors when analyzing a proposed class settlement for fairness: (1) the posture of the case at the time the proposed settlement was reached; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the type of case at issue. *Id*. at 158-59.

Here the settlement was only reached after over a year of hard-fought litigation and substantial discovery, including seven depositions, and extensive document and database discovery by both sides.   Plaintiffs and Defendant were able to fully assess the strength of their respective claims and defenses prior to settlement.   Further, the settlement was reached through arms'-length and contentious negotiations with the assistance of a highly respected and experienced mediator.   Courts have found that, where a settlement is the result of genuine arms'-length negotiations, there is a presumption that it is fair. *See*, *e.g.*, *City P'ship Co. v. Atlantic Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (1st Cir. 1996). Consequently, the circumstances surrounding the Parties' settlement negotiations support a finding that the settlement is fair. *Singleton,* 976 F. Supp. 2d at 679 (finding settlement to be fair when parties had exchanged written

discovery and "all parties had a clear view of the strengths and weaknesses of their respective positions").

Additionally, Plaintiffs' counsel is highly experienced in consumer class action litigation and FCRA litigation in particular. Plaintiffs' counsel endorse the settlement as fair and adequate under the circumstances. Courts recognize that the opinion of experienced and informed counsel in favor of settlement should be afforded substantial consideration in determining whether a class settlement is fair and adequate. *See*, *e.g.*, *In re MicroStrategy Sec. Litig.*, 148 F. Supp. 2d 654, 665 (2001). Indeed, the settlement amount is within the FCRA's statutory damages range of $100 to $1,000 and is in line and for some cases greater than recoveries in other settlements for similar claims, as discussed further below.

### B.     The Settlement Terms Are Adequate And Reasonable

In assessing the adequacy of a proposed settlement, the Court should consider: (1) the relative strength of Plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses Plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of Defendant and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement. *Jiffy Lube*, 927 F.2d at 159. Together, these factors weigh in favor of the adequacy of the proposed Settlement.

The first and second factors "compel the Court to examine how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case." *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 256 (E.D. Va. 2009). The settlement is impressive when considering the range of possible recoveries for the Settlement Class, Defendant's potential defenses, and the number of procedural hurdles between Plaintiffs and a final judgment. For the claims under 15 U.S.C. § 1681g(a), Plaintiffs filed their

case seeking statutory damages under the FCRA, which provides for statutory damages of between $100 and $1,000 for each willful violation.  15 U.S.C. § 1681n(a)(1).  Plaintiff did not seek actual damages.[2]  The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, *see* 15 U.S.C. § 1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case.  *Ashby v. Farmers Ins. Co. of Or.*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *accord In re Farmers Ins. Co., Inc., FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Ok. 2010).  The statutory damage range applies to all willful FCRA violations, including violations for willfully publishing inaccurate information.  The settlement provides a recovery of at least $132 per class member.

Through the settlement, Settlement Class Members have avoided the substantial risks they faced, including the risk of a total loss wherein they would recover nothing.  Defendants would have mounted numerous merits and certification defenses, as well as raised arguments regarding the Article III standing of the named Plaintiffs and absent Class Members.  Both parties would have likely appealed any class certification decision and verdict.  A recovery of a meaningful percentage of the likely award if these claims had proceeded all the way through final judgment is thus a significant result.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

---

[2] To recover actual damages under the FCRA, damages must be caused by the FCRA violation itself, not merely by the report associated with the violation.  *See Bach v. First Union Nat. Bank*, 149 F. App'x 354, 361 (6th Cir. 2005) (evaluating "causal link" between violation and damages).

The $132 recovery that each class member will receive is also in line with or exceeds the recoveries in other similar settlements for claims under § 1681g(a). *See, e.g., Watkins v. Hireright, Inc.,* No. 13-CV-1432-BAS-BLM, 2016 WL 5719812, at *1 (S.D. Cal. Sept. 30, 2016) (approving settlement that provided for payments $25.02 to settle claims under § 1681g(a)); *Stokes v. RealPage, Inc.*, No. 15-cv-1520, ECF No. 51 (E.D. Pa. June 30, 2017) (providing for $200 gross recovery per class member *prior* to deductions for attorneys' fees and costs, administration expenses, and class representative service awards); *Jenkins v. Equifax Info. Servs., LLC,* No. 15-cv-443, ECF No. 30 (E.D. Va., Apr. 27, 2016) (providing for credit monitoring service but no other monetary relief for settlement of claim under § 1681g).

The non-monetary benefits of the settlement are also significant and must be considered along with the monetary relief.  Defendant has agreed to an order by which it has agreed to cease using the trade name "Crimcheck America" in conjunction with its file disclosures.  This result probably could not have been achieved in litigation, because whether the FCRA allows for private injunctive relief at all is an unsettled question with the majority of courts finding that FCRA does not provide such relief.  *See Alston v. Equifax Info. Servs., LLC*, No. CIV.A. TDC-13-1230, 2014 WL 6388169, at *3 (D. Md. Nov. 13, 2014) (noting that "vast majority of district courts, including in this district and within the Fourth Circuit" have held that injunctive relief is unavailable for private litigants).

The recovery provided for in the settlement is thus in line or exceeds what Plaintiffs may have received had they prevailed at trial.  Establishing liability in this case, however, was far from certain.  The FCRA is not a strict liability statute.  *Dalton v. Capital Associated Indus.*, 257 F.3d 409, 417 (4th Cir. 2001).  Additionally, a FCRA plaintiff can recover statutory damages only where the defendant has acted willfully.  15 U.S.C. §§ 1681n(a)(1).  If the matter were litigated, in

addition to its other merits and standing arguments, Defendant would have vigorously contested the question of willfulness, including with the argument that Defendant's interpretation of its statutory obligations was objectively reasonable, and therefore that any violation necessarily was not willful under the FCRA. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007) ("a company subject to FCRA does not act in reckless disregard . . . unless the [challenged] action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."). The outcome of Plaintiffs' claims, therefore, cannot be certain. *See Domonoske v. Bank of Am.*, 790 F. Supp. 2d 466, 474 (W.D. Va. 2011) (approving final settlement in the FCRA context and observing that "proof of willfulness seems an onerous task with a highly uncertain outcome").

Moreover, the requested attorneys' fees and costs, and Class Representative service awards are also reasonable.  As will be set forth in more detail in Plaintiffs' counsel's forthcoming fee application, Plaintiffs' counsel's actual fees and costs exceed what will be requested in the petition. *See Brown v. Transurban USA, Inc.*, 318 F.R.D. 560, 578 (E.D. Va. 2016) (finding fees that were less than class counsel's lodestar to be reasonable).  Further, the modest service awards of $2,500 sought here are routinely awarded. *Singleton*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (finding in FCRA case that "relatively modest incentive payment of $2,500 to each Named Plaintiff is reasonable").

The third factor, which weighs the proposed settlement in light of the time and expense of further litigation, is "based on a sound policy of conserving the resources of the Court and the certainty that unnecessary and unwarranted expenditure of resources and time benefits all parties." *Mills Corp.*, 265 F.R.D. at 256 (internal quotation marks and alterations omitted).  Absent

16

settlement in this case, multiple stages of litigation remain that would be time-consuming and costly. If the case had not settled, the parties would have needed to engage in further fact and expert discovery, as well as brief class certification and summary judgment before getting to trial and an appeal. Moreover, the fourth and fifth factors are neutral, as Defendant is solvent and there has been no objection to the proposed settlement at this date.

For these reasons, the opinion of all counsel involved is that the terms of the Settlement Agreement represent a fair, reasonable, and adequate resolution of the claims alleged.

## III.    The Proposed Notice And Notice Plan Satisfy Rule 23

Following preliminary approval, the Class Members must be given notice concerning the nature of the settlement and of their rights. Rule 23(e)(1) requires that: "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Rule 23(c)(2)(B) sets forth the contents of a notice to be sent to members of a Rule 23(b)(3) class: For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through an attorney if the member so desires; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on members.

The proposed Notice to the Settlement Class, which is attached to the Settlement Agreement, satisfies all of these requirements.  The notice will be sent via U.S. mail to each class member identified from Defendant's records, with the Settlement Administrator running all addresses through its customary databases, including the United States Postal Service National

Change of Address database, to identify any available forwarding information. To the extent a

notice is returned with a forwarding address, the Settlement Administrator will re-mail the notice

to the forwarding address.  Moreover, the Settlement Administrator will operate a settlement

website on which information regarding the settlement and important settlement documents will

be posted.  This notice program meets the requirements of Fed. R. Civ. P. 23, and should be

approved. *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is

beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that

class members receive 'the best notice practicable under the circumstances.'").

## <u>CONCLUSION</u>

Based on the foregoing, the Court should grant Plaintiffs' Motion and enter the preliminary

approval order.

**BERGER & MONTAGUE, P.C.**

*/s/ John G. Albanese*
Dated:  August 30, 2017            John G. Albanese (MN Bar # 0395882)*
                                   E. Michelle Drake (MN Bar # 0387366)*
                                   43 S.E. Main Street, Suite 505
                                   Minneapolis, MN 55414
                                   Tel:  (612) 594-5999
                                   Fax: (612) 584-4470
                                   jalbanese@bm.net
                                   emdrake@bm.net

Kristi Cahoon Kelly
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202-A
Fairfax, VA 22030
Tel:  (703) 424-7576
Fax: (703) 591-0167
kkelly@kellyandcrandall.com

*admitted pro hac vice*

**ATTORNEYS FOR PLAINTIFFS AND
THE PROPOSED CLASS**

### CERTIFICATE OF SERVICE

I certify that on this 30th day of August, 2017, I filed a copy of the foregoing document

with the clerk of Court using the CM/ECF system, which will automatically send notice of such

filing to all counsel of record.

*/s/ John G. Albanese*
John G. Albanese