**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | | |
|---|---|---|
| JAMES L. WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:16-cv-00058-PX |
| | ) | |
| CORELOGIC RENTAL PROPERTY | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR
ATTORNEY'S FEES, COSTS, AND NAMED PLAINTIFFS' SERVICE AWARDS**

Plaintiffs, on behalf of themselves and all others similarly situated, by counsel, respectfully

submit the following memorandum of law as support for their Motion for Attorney's Fees, Costs,

and Named Plaintiffs' Service Award.

**INTRODUCTION**

In this case, Class Counsel and Named Plaintiffs James Williams and Hector Hernandez

have worked hard to obtain a Settlement that provides substantial monetary and prospective relief

to all Settlement Class members.   Class Counsel invested significant time and effort on

investigation, discovery, analysis and calculation of the class member data, mediation, negotiation

of the Settlement Agreement ("Settlement Agreement" or "Settlement") (ECF No. 103-3),

securing preliminary approval, supervising the settlement administrator and responding to

Settlement Class member inquiries.  They will also continue to work on the outstanding work left

to be done in the case, including seeking final approval of the Settlement, overseeing the class

member distribution process, obtaining entry of the injunctive relief order, and continuing to

respond to Settlement Class member inquiries.  For their part, the Named Plaintiffs have invested

substantial amounts of time corresponding with Counsel, assisting with discovery and document production, sitting for depositions, and preparing for mediation.  The end result is an exceptional Settlement that will provide substantial monetary and injunctive relief to over 2,000 consumers in exchange for a very narrow release.  Furthermore, this lawsuit has encouraged Defendant to undergo changes in its business practices, which benefits not only the Settlement Class members, but also any future consumers that request their consumer disclosures from the Defendant.

Based on the results achieved and investments made, Class Counsel and the Named Plaintiffs seek an award for fees and out-of-pocket costs of $277,152.  This is a fraction of the $435,257.14 that Class Counsel has incurred in fees and expenses thus far (including $57,240.64 in out of pocket costs).  Class Counsel took this case on a contingency basis and has borne the significant risk of non-payment and thus far, Class Counsel has not been paid or reimbursed for their efforts in this case.  Plaintiffs also request modest class representative service awards of $2,500 per class representative.  They also seek leave to pay administrative expenses to the third-party settlement administrator in the amount of $14,000.  These amounts are consistent with those allowed by the Settlement Agreement.  (*See* ECF No. 103-3. at ¶¶ 4.2.2, 5.3.)

Considering the amount of time, effort, and skill Class Counsel has contributed to this case, the risks involved in undertaking this litigation, and awards granted in similar cases, the requested attorneys' fees and costs are reasonable.  Furthermore, the requested Named Plaintiffs' service awards are well earned.  Accordingly, Plaintiffs respectfully request that the Court approve their Motion for Attorney's Fees, Costs, and Named Plaintiff Service Awards.  Defendant does not oppose the relief sought by this Motion.

## I.      CASE HISTORY

Named Plaintiff James Williams commenced this action on January 7, 2016.  (ECF No. 1.)

On March 24, 2016, a First Amended Complaint was filed, which included a second Named

Plaintiff, Hector Hernandez.  (ECF No. 13).   The First Amended Complaint is the operative

complaint and alleges that Defendant violated the Fair Credit Reporting Act ("FCRA") by failing

to clearly and accuracy disclose the sources of the information listed in a consumer's file

disclosure, as required by 15 U.S.C. § 1681g(a)(2).  Plaintiffs' First Amended Complaint alleges

that Defendant's file disclosures falsely stated that the information listed in Plaintiffs' disclosures

were from a "Search Report by Crimcheck America," which is Defendant's predecessor's

tradename—not the source where Defendant actually obtained the information listed in the

disclosures.[1]   In addition to violating the plain language of the FCRA, a consumer reporting

agency's failure to accurately identify the source of a public record included on a consumer file

has a substantial negative effect on the consumer.  Not only are consumers entitled to this

information, but when inaccurate information is included on a consumer's disclosure and the

source of that information in hidden from the consumer, it creates a complicated obstacle for

consumers attempting to resolve issues with their consumer report.  Often, with criminal records,

consumer reporting agencies or their vendors purchase "indexes" and do not acquire or otherwise

examine a complete public record before adding the criminal information to a consumer report.

Because these indexes do not collect the complete set of data contained in the public record, any

subsequent reporting of that criminal record often contains inaccuracies regarding status,

disposition, or even who the record actually belongs to.  When the source of that information is

---

[1] Plaintiffs also alleged claims under 15 U.S.C. § 1681e(b) and 15 U.S.C. § 1681i, which were resolved individually.

hidden from the consumer, it becomes significantly more difficult for a consumer to dispute inaccurate information and have it updated or removed from their consumer report.

This action has been vigorously litigated.  The discovery process in this case was contentious and involved several meet-and-confer conferences, as well as court intervention and a fully briefed motion to compel.  (ECF No. 79.)  Plaintiffs conducted numerous depositions of Defendant's current and former employees, and Defendant deposed both of the Named Plaintiffs. Defendant produced thousands of pages of documents related to the claims at issue in the case and a sample of its database, which Plaintiffs hired an expert to analyze at significant expense. Defendant also served discovery requests on Plaintiffs, which they answered, and both parties conducted third-party discovery.

After this robust discovery period, the parties mediated the case with Rodney Max of Upchurch Watson White & Max, who is a well-respected mediator with significant FCRA and class-action mediation experience.  During the mediation process, the case was stayed.  (ECF No. 99.)  Prior to the formal mediation, the parties exchanged additional information and prepared detailed mediation statements, which included the parties' respective positions on class certification, the case's merits, and damages.  The mediation occurred on June 15, 2017 in Dallas, Texas and lasted a full day.  During this session, the parties agreed to a class-wide resolution of the Plaintiffs' 15 U.S.C. § 1681g(a)(2) claims, which was ultimately formalized in the Settlement Agreement previously submitted to and preliminary approved by the Court.  (ECF Nos. 103-3; 107.)

On October 5, 2017, after a hearing, the Court granted preliminary approval to the Settlement, conditionally certified the nationwide Settlement Class, appointed Kelly & Crandall, PLC and Berger & Montague, P.C. as Class Counsel, appointed Named Plaintiffs as Class

Representatives, appointed American Legal Claims Services, LLC ("ALCS") as Settlement Administrator, and directed the parties to provide notice to the Settlement Class.  (ECF No. 107.) The Court scheduled a final approval hearing for March 5, 2018 at 2:00 p.m.

## II.   SETTLEMENT OVERVIEW

The Settlement is memorialized in a formal Settlement Agreement executed by the parties. (ECF No. 103-3.)  It establishes a nationwide Settlement Class and creates a common fund of $595,000 to be distributed *pro rata* by check with a payment of at least $132 to each Settlement Class member.  This payment will be made automatically and does not require Settlement Class members to submit a claim form or any other documentation to receive class benefits.  (ECF No. 103-3 ¶ 4.3.2.)  This calculated amount already accounts for the reduction for attorney's fees and costs, the Named Plaintiffs' service awards, and payment of class notice and administration.  Any checks that remained uncashed 90 days after the date of mailing or checks that are returned as undeliverable shall revert to the Settlement Escrow Account and will then be used to reimburse Defendant for costs of class notice and administration under Sections 4.2.3 and 4.2.4 of the Settlement Agreement and the Settlement Administrator for any costs that exceed $14,000.  If any funds remain after this reimbursement, the parties will jointly move the Court to pay the remaining funds to Public Justice, a non-profit entity, as a *cy pres* award. (ECF No. 103-3 ¶ 5.3.1.)

In addition to this monetary relief, the Settlement Agreement also provides for significant injunctive relief.  The parties will jointly move the Court for an entry of an injunctive relief order (the proposed version of which is filed at ECF No. 103.3, Ex. B), which will prohibit Defendant from including the phrases "Statewide Criminal Search Report by Crimcheck America," "Multistate Criminal Search Report by Crimcheck America," or "Sex Offender Search Report by Crimcheck America" in the criminal record section of file disclosures sent to consumers in

response to their request for a copy of their consumer disclosure.  (ECF No. 103-3 ¶ 4.3.1.)  This injunctive relief, which benefits not only Settlement Class members, but also all future consumers who request a copy of their file disclosure from Defendant, directly addresses the claims at issue in this case and will prevent future harm to thousands of consumers.  And, as discussed above, it will also make it significantly easier for any consumers with inaccurate information in their consumer file to have the inaccurate information removed or corrected.  This relief is significant— and for consumers who are having a difficult time obtaining housing because of inaccurate information on their consumer report, it constitutes a tangible benefit worth significantly more than a monetary payment.

As the overview of the settlement distribution shows, the Settlement achieves an excellent outcome for the Settlement Class.  Each Settlement Class member will receive a check that exceeds the minimum $100 statutory damages allowed under the FCRA.  *See* 15 U.S.C. § 1681n(a)(1)(A).

## III.   CLASS COUNSEL'S AND THE NAMED PLAINTIFFS EFFORTS IN THIS CASE

The qualifications of and work performed by Class Counsel are set forth in the attached Class Counsel declarations.  *See* Declaration of Kristi Kelly ("Kelly Decl."); Declaration of E. Michelle Drake ("Drake Decl.").   Class Counsel invested significant time and resources investigating and litigating this action.  Many of the tasks performed by Class Counsel are not reflected in a review of the docket in this matter, as much of the litigation of this action took place outside the courtroom.  Specifically, Class Counsel has (1) personally interviewed and consulted with the Named Plaintiffs prior to filing the Complaint and the Amended Complaint, (2) engaged in extensive investigation of the claims before deciding to file this case; (3) drafted and amended the Complaint; (4) retained and conferred with co-counsel; (5) drafted and served discovery requests; (6) reviewed documents produced by Defendant and retained an expert to analyze

Defendant's database production; (7) conducted numerous depositions of Defendant's current and former employees; (8) prepared for the Named Plaintiffs' depositions and defended those depositions; (9) performed damage calculations; (10) conferred informally with Defendant regarding pre-mediation discovery; (11) prepared for and traveled to Dallas, Texas to attend a day-long mediation; (12) negotiated a comprehensive class-action Settlement; (13) drafted and filed a motion for preliminary approval of the Settlement and presented the Settlement to the Court at a hearing for preliminary approval; (14) oversaw the administration and distribution of settlement notice to the Settlement Classes; (15) fielded inquiries from Settlement Class members; and (16) drafted and filed the instant motion for attorneys' fees, costs, and class representative incentive awards. Kelly Decl. at ¶ 22; Drake Decl. at ¶ 4. In addition, there is still significant work to be done in the case, including responding to any class member objections, drafting and submitting the final approval papers, preparing for and attending the final fairness hearing, continuing to respond to class member inquiries, and overseeing class member disbursements. *Id.*

Class Counsel have not received any compensation to date because they performed their work on a contingent fee basis. Kelly Decl.. at ¶ 18; Drake Decl. at ¶ 3. In addition to attorneys' fees of $378,016.50 incurred to date, Class Counsel has approximately $57,240.64 in out-of-pocket costs and expenses as of the date of this motion. Kelly Decl. at ¶¶ 18-19; Drake Decl. at ¶ 9 & Exs. A, B.. The bulk of those costs are filing fees, deposition costs, expert witness fees, mediation fees, travel expenses, and delivery charges. In the event that Class Counsel did not successfully resolve this matter, either through settlement or trial, they would have received no payment or reimbursement for expenses. Considering the risks involved in the litigation, the time, effort, and skill Counsel has contributed, and the results achieved, the requested fees are reasonable.

The Named Plaintiffs should be awarded $2,500 each for their service as Class Representatives in this case.  They have kept informed about this case, and participated in an extensive discovery process, including responding to discovery, providing documents to Class Counsel for production, and sitting for depositions.  They also reviewed and approved the Settlement in this case and remained available during the settlement negotiations that occurred in Dallas, Texas.  This level of involvement more than justifies the modest service awards requested.

## **ARGUMENT**

Fed. R. Civ. P. 23(h) allows for the award of "reasonable attorneys' fees and nontaxable costs that are authorized by law or the parties' agreement."  "[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  In determining a reasonable fee, courts generally use two different methods, the "lodestar" method and the "percentage of the fund" method.  *In re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 786 (E.D. Va. 2001).  Under the lodestar method, the court determines the number of hours reasonably expended by counsel that created the fund and then multiplies those hours by a reasonable hourly rate to arrive at a lodestar figure.  *Id.*  The lodestar can then be increased or decreased pursuant to various factors as set forth by the Fourth Circuit.[2]  *Id.* & n. 23.  The percentage of the fund method

---

[2] These factors are:
(1) time and labor expended;
(2) novelty and difficulty of the questions raised;
(3) skill required to properly perform the legal services;
(4) attorney's opportunity costs in pressing the litigation;
(5) customary fee for like work;
(6) attorney's expectations at the outset of litigation;
(7) time limitations imposed by the client or circumstances;
(8) amount in controversy and results obtained;
(9) experience, reputation, and ability of the attorney;
(10) undesirability of the case within the legal community in which the suit arose;

requires the trial court to determine a percentage of the recovery "with the precise percentage selected by the trial court with reference to essentially the same case-specific factors used to adjust, or determine a multiplier, for a lodestar figure." *Id.*

The Fourth Circuit has not specified a preference for the lodestar method or the percentage of the fund. *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 463 (S.D.W. Va. 2010). Ultimately, the determine of a reasonable fee is in the discretion of the district court. *Id.* "With either method, the goal is to make sure that counsel is fairly compensated." *Brown v. Transurban USA, Inc.,* 318 F.R.D. 560, 575 (E.D. Va. 2016).

Here under either method and the factors set forth by the Fourth Circuit, Class Counsel's requested fee is reasonable. Class Counsel expended significant time, effort, and money on this case with no guarantee of success and Class Counsel's current lodestar exceeds the requested fees and costs. Moreover, after accounting for costs, Class Counsel is requesting 37% of settlement fund, which is within the acceptable range awarded in the Fourth Circuit.

## III.   CLASS COUNSEL'S REQUESTED FEES AND COSTS ARE REASONABLE AND SHOULD BE AWARDED.

### A.   Class Counsel Obtained Excellent Results for the Settlement Class.

The "most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 629 (4th Cir. 1995) (citations and quotations omitted). Although low recoveries are the norm in cases involving violations of

---

(11) nature and length of the professional relationship between the attorney and client;
(12) fee awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4th Cir.1978)).

consumer protection statutes, *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 258-59 (E.D. Pa. 2011) (noting that the FCRA "contemplates relatively low recovery"), here, Class Counsel obtained a highly beneficial Settlement for the Settlement Class.  First, every Settlement Class— without having to submit a claim form or any other documentation—will automatically receive significant monetary relief.  While a willful failure to comply with the FCRA exposes a defendant to actual or statutory damages of not less than $100 and not more than $1000, under the Settlement's *pro rata* distribution, each Settlement Class member will receive a check for at least $132—an amount which exceeds the statutory minimum.  *See* 15 U.S.C. § 1681n(a)(1)(A). Comparing this result with similar settlements for violations of § 1681g(a), the Settlement demonstrably secures an excellent recovery for the Settlement Class.  *See, e.g., Watkins v. Hireright, Inc.,* No. 13-CV-1432-BAS-BLM, 2016 WL 5719812, at *1 (S.D. Cal. Sept. 30, 2016) (approving settlement that provided for payments $25.02 to settle claims under § 1681g(a); *Stokes v. RealPage, Inc.*, No. 15-cv-1520, ECF No. 51 (E.D. Pa. June 30, 2017) (providing for $200 gross recovery per class member *prior* to deductions for attorneys' fees and costs, administration expenses, and class representative service awards); *Jenkins v. Equifax Info. Servs., LLC,* No. 15-cv-443, ECF No. 30 (E.D. Va., Apr. 27, 2016) (providing for credit monitoring service but no other monetary relief for settlement of claim under § 1681g).

Importantly, the Settlement provides for significant injunctive relief for not only Settlement Class members, but any consumer who requests their file disclosure from Defendant in the future—relief that is uniquely available through settlement and could not have been obtained had the Plaintiffs proceeded to trial.  Whether the FCRA allows for private injunctive relief at all is an unsettled question with the majority of courts finding that FCRA does not provide such relief.  *See Alston v. Equifax Info. Servs., LLC*, No. CIV.A. TDC-13-1230, 2014 WL 6388169, at *3 (D. Md.

Nov. 13, 2014) (noting that "vast majority of district courts, including in this district and within the Fourth Circuit" have held that injunctive relief is unavailable for private litigants).  While the injunctive relief component of the Settlement is difficult to monetize, it certainly adds significant value to the Settlement, including because it will prevent any consumers from suffering similar harm in the future, and Plaintiffs are entitled to a fee for obtaining this relief.  *See, e.g.*, *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, No. 3:11-CV-754, 2014 WL 4403524, at *15 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015).  In fact, Class Counsel was adamant that injunctive relief would be necessary from the outset of settlement negotiation.

As discussed above, the injunctive relief that the Settlement provides will prevent the type of class member injury that this lawsuit challenged—Defendant's alleged failure to identify the source of the information it includes in consumer disclosures, which, as described above, prevents consumers from correcting any incorrect information in their file.  This is a significant benefit that helps not only Settlement Class members, but will also benefit potentially thousands of consumers in the future, especially ones who are seeking to have inaccurate information updated or removed from their consumer file—often a significant hurdle for people prevented from obtaining housing based on an inaccurate consumer report.

Critically, Settlement Class members are receiving these benefits for a very narrow release. Specifically, they are only releasing claims that they have under 15 U.S.C. § 1681g(a) of the FCRA or state law equivalents.  (ECF No. 103-3 ¶ 6.1.1).  The release does not include claims under any other section of the FCRA.  For instance, claims related to the accuracy of reports under 15 U.S.C. § 1681e(b) or to Defendant's response to consumer disputes under 15 U.S.C. § 1681i are not

released and the Settlement Class members retain all of their rights to pursue those claims even after receiving significant and meaningful class benefits.

The Settlement provides significant and meaningful monetary and non-monetary benefits and strongly favors the requested fee award.

**B.      The Settlement Class's Representation Was High-Quality, Skillful, and Efficient.**

Class Counsel has demonstrated skill and efficiency in resolving this dispute.  In assessing Counsel's performance for this factor, the Court may consider Counsel's experience in the field, the quality of opposing counsel, the amount of work done, and the efficiency and skill with which it was accomplished.  *See In re The Mills Corp. Sec Litig.*, 265 F.R.D. 246, 262-63 (E.D. Va. 2009) (citations omitted). Here, Class Counsel is highly qualified and has abundant experience litigating FCRA cases.  Kelly Decl. at ¶¶ 5-9; Drake Decl. at ¶¶ 6-9.  Although Class Counsel opposed a large national corporation represented by sophisticated and experienced FCRA attorneys, Counsel successfully engaged in robust discovery, including: the production of thousands of pages by Defendant; the production of a sample of the Defendant's database, which Class Counsel hired an expert to analyze; numerous depositions of Defendant's current and former employees, as well as the depositions of the Named Plaintiffs; and the successful litigation of a motion to compel. In addition, Class Counsel engaged in additional efforts during the mediation of this case, including an additional, informal exchange of information and the preparation of detailed mediation statements, in order to reach a Settlement highly favorable to the Settlement Class.  The fact that Class Counsel accomplished this task both efficiently and in a manner which was beneficial to the Settlement Class is a testament to their quality and skill.  *See In re The Mills Corp. Sec. Litig.*, 265 F.R.D. at 262-63 (noting counsel's "extensive successful motion practice" and

obtainment of "a favorable Settlement after numerous mediations sessions" supported a higher fee award).

> **C.     Class Counsel Expended Significant Time and Money on this Complex Litigation that Presented a High Risk of Nonpayment.**

Class Counsel took this case entirely on a contingent basis and to date, have received no payment for their services.  The risk of nonpayment that arises from a contingent fee arrangement warrants a higher fee award.  *See Lewis v. J.P. Stevens & Co.*, 849 F.2d 605 (4th Cir. 1988).  The more complex or difficult the case, the more risk involved in taking the case on a contingency basis.  A "case is more complex when the applicable laws are new, changing, or unclear." *See Jones v. Dominion Res. Servs., Inc.*, 601 F. Supp. 2d. 756, 762 (S.D. W. Va. 2009) (citing *Goldenberg,* 33 F.Supp.2d at 439).

Class Counsel has spent significant time and money on this case. Counsel's base lodestar amount, through the date of this Motion, is $378,016.50 which is less than the fee requested here.. Kelly Decl. at ¶ 18; Drake Decl. at ¶ 9 & Ex. A.  Class Counsel's hourly rates are consistent with awards that have been approved by other courts in other FCRA class actions.[3]  Kelly Decl. at ¶ 21.

---

[3] *See*, *e.g.*, *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *3 (S.D. Ill. Mar. 31, 2016) (approving hourly rates of $460 to $998 for attorneys, $309 for paralegals, and $190 for legal assistants); *In re Mercedes-Benz Tele Aid Contract Litig.*, No. 07-CV-2720, 2011 WL 4020862, at *7 (D.N.J. Sept. 9, 2011) (finding reasonable, in consumer class action settlement, hourly rates up to $855 for partners and up to $560 for associates);; *Flores v. Express Servs., Inc.*, No. 14-cv-03298, 2017 WL 1177098, at *4 (E.D. Pa. Mar. 30, 2017) (finding hourly rates for attorneys ranging from $725 to $225 reasonable, in FCRA class settlement); *Chakejian, . Equifax Info. Servs.*, LLC, 275 F.R.D. 201, 216–17 (E.D. Pa. 2011 (finding hourly rates up to $700 for partners and $175 for paralegals are reasonable for experienced class counsel in a FCRA class action); *Flores*, 2017 WL 1177098, at *5 (approving hourly rates from $225 to $725 as reasonable); *Reibstein*, 761 F. Supp. 2d at 260 (finding hourly rates of $650 for partners and $175 to $225 for paralegals and law clerks reasonable for experienced attorneys are reasonable for experienced class counsel in a FCRA class action); *Brown*, 318 F.R.D. at 576 (collecting authority on reasonable hourly rates); Laffey Matrix, http://www.laffeymatrix.com/see.html (setting forth rates between $343 and $826 for attorneys of similar experience levels).

Here, Class Counsel's requested fees alone result in a ***negative*** lodestar multiplier of approximately 0.73.  *See Brown*, 318 F.R.D. at 578 (finding fees that were less than class counsel's lodestar to be reasonable).  That Class Counsel's requested fee is less than their lodestar is notable and unusual because the FCRA is a fee shifting statute.  15 U.S.C. § 1681o, n.  Moreover, in addition to their lodestar, Class Counsel has expended over $57,000 in out-of-pocket costs.

When Class Counsel took on this litigation, a successful conclusion was far from guaranteed.  To illustrate, the Fourth Circuit recently overturned a multi-million dollar judgment against a consumer reporting agency under 15 U.S.C. § 1681g(a)(2) for lack of standing.  *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337 (4th Cir. 2017).  Thus, it was far from certain whether Plaintiffs and Settlement Class members would be able to recover anything for the alleged violation in this case.

Further, to recover the statutory damages of $100 to $1000 sought by Plaintiffs under 15 U.S.C. § 1681n, Plaintiffs would have had to prove to that Defendant not only violated the statute, but did so willfully. Defendant would have vigorously challenged this element of Plaintiffs' claim, and to prevail, Plaintiffs would have had to show not only that their interpretation of the FCRA was correct, but that Defendant's interpretation of the statute was objectively unreasonable. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69 (2007). This is a high standard and considering the uncertainty surrounding interpretation of the provision and the difficulties of proving willfulness, there was a substantial risk of nonpayment.  *See Domonoske v. Bank of America*, 790 F. Supp. 2d 466, 476 (W.D. Va. 2011) ("[G]iven the difficulties of proving willfulness or even negligence with actual damages [under the FCRA], there was a substantial risk of nonpayment."); *Chakejian*, 275 F.R.D. at 219 ("Plaintiffs in this [FCRA] case would have to prove willfulness at trial.  Because of the risk that they may not be able to do so . . . substantial attorney's fees should be awarded with

settlement approval.").  Thus, the risk of nonpayment, complexity, and duration of this case justify the requested fee.

### D.      Public Policy Supports the Requested Fee.

The Court should award the requested fee because "[t]he type of litigation undertaken by [C]lass [C]ounsel here, which addresses important consumer concerns that would likely be ignored without such class action lawsuits, must be encouraged."  *See Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 123 (E.D. Pa. 2005).  "Attorneys' fees must be sufficient 'to ensure that competent, experienced counsel will be encouraged to undertake the often risky and arduous task of representing a class.'"  *Id.* at 765 (citations omitted).  Furthermore, "public policy generally favors attorneys' fees that will induce attorneys to act and protect individuals who may not be able to act for themselves."  *See Jones*, 601 F. Supp. 2d at 755.  Without adequate incentives for attorneys' to small value cases,  "[P]laintiff[s] would have faced substantial difficulties in finding counsel in the local or other relevant market."  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 731 (1987); *accord Lyle v. Food Lion, Inc.*, 954 F.2d 984, 989 (4th Cir. 1992).

Because recoveries under the FCRA are generally low, it is often not worth it for individual consumers to bring claims.  *See Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967, 974 (4th Cir. 1987) ("[T]here will rarely be extensive damages in an FCRA action."); *Stillmock v. Weis Markets, Inc.*, 385 F. App'x 267, 274 (4th Cir. 2010) ("[The] low amount of statutory damages available means no big punitive damages . . . making an individual action unattractive," such that the FCRA will not be enforced "by individual actions o[n] a scale comparable to the potential enforcement by way of class action.").  To ensure attorneys continue

to take on these important cases, courts should compensate them appropriately for the numerous risks involved.

While ultimately this case settled at a number where each Settlement Class member will receive an amount that is more than the FCRA's statutory minimum, that outcome was not clear from the outset, and most Settlement Class members would not have pursued their claims individually—or even known of the claim to begin with, as most consumers would not have the industry specialized knowledge that Defendant's criminal record sources were not the ones listed on Defendant's consumer disclosures.  Thus, this is the kind of litigation the Court should encourage.  *See Council for Clean Air*, 483 U.S. at 731.

### E.      The Requested Fee is Within the Acceptable Range of Percentage Awards in this Circuit.

Class Counsel maintains that their lodestar alone justifies the requested fee but even as a percentage of the Settlement Fund, the requested fees are reasonable.  Because this is a relatively small settlement with a fee shifting statute, the percentage-of-the-fund method is not the best measure of a reasonable fee in these circumstances.  *Cf. Millea v. Metro-N. R. Co.*, 658 F.3d 154, 169 (2d Cir. 2011) ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.")

That being said, the percentage of the fund sought here is reasonable.  The Settlement Agreement allows Class Counsel to request total $277,152 to compensate Class Counsel for their fees and out-of-pocket costs.  Class Counsel has incurred $57,240.62 in out-pocket costs litigating this case.  Out-of-pocket expenses are reimbursable from the common settlement fund.  *Reed v.*

*Big Water Resort, LLC*, No. 2:14-CV-01583-DCN, 2016 WL 7438449, at *12 (D.S.C. May 26, 2016) ("Costs that are reasonable in nature and amount, may be reimbursed from the common fund." (internal quotations omitted); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 689 (D. Md. 2013) ("Examples of costs that have been charged include necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying.")

After accounting for costs, Class Counsel is requesting $219,911.36 in fees or 37% of the fund which is well within the typical range awarded to attorneys in other, similar cases, especially in small class action settlements.  The percentage of the fund also does not consider any value that the injunctive relief adds to the Settlement. Attorneys' fees awarded in common-fund cases frequently range between 15% and 45%, and the requested fees here represented a reasonable percentage of the fund..  *In re Lorazepam & Clorazepate Antitrust Litig.*, No. 99MS276(TFH), 2003 WL 22037741, at *7 (D.D.C. June 16, 2003); *Kidrick v. ABC Television & Appliance Rental,* 3:97CV69, 1999 WL 1027050 (N.D. W. Va. May 12, 1999) (noting fees range from 30% to as high as 50%); *Eason v. AFNI, Inc.*, No. 8:08-CV-00128, ECF No. 151 at 5-6 (D. Md. Jan 15, 2008) (awarding 34.6% of recovery); *Shelton v. Crescent Bank & Trust*, No. 1:08-CV-01799, ECF No. 39 at 7 (D. Md. Jul 09, 2008) (awarding 33.3% of recovery); *Brittingham et al v. Prosperity Mortgage Co.*, No. 1:09-CV-00826, ECF No. 73 at 4 (D. Md. Apr. 1, 2009) (same); *see also Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 5 (2d Cir. 2013) (upholding fee award of 52.2% of fund in a fee shifting case).

In sum, the amount requested for Class Counsel's fees and costs, $277,152, is reasonable and should be awarded.

## IV.     THE NAMED PLAINTIFFS' REQUESTS FOR SERVICE AWARDS ARE APPROPRIATE

Finally, the Named Plaintiffs respectfully request that the Court grant each an award of $2,500 for bringing this litigation, their time invested in this case, and for releasing their claims. The Named Plaintiffs seek these amounts to account for the time they have invested in the lawsuit on behalf of the absent class members. "To determine whether an incentive payment is warranted, it is appropriate to consider 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Edelen v. Am. Residential Servs.*, LLC, 2013 WL 3816986, at *16 (D. Md. July 22, 2013) (citing *Hoffman v. First Student, Inc.*, 2010 WL 1176641, at *3 (D. Md. Mar. 23, 2010).

Here, each Plaintiff requests, and the Defendant does not oppose, a service award in the amount of $2,500 each, for their service as Class Representatives. Plaintiffs each agreed to serve as Class Representatives after Class Counsel explained to them the responsibilities required of individuals serving in that rule. They understand the theories of this lawsuit and have invested significant time and effort into the case, including by keeping informed of the case's status, reviewing documents provided to them by Class Counsel, responding to discovery and providing documents for production, sitting for depositions, and discussing settlement negotiations with Class Counsel. Kelly Decl. at ¶¶ 25-27. Under these circumstances, a service award to the Named Plaintiffs for their time is appropriate.[4] Accordingly, the modest awards of $2,500 are reasonable

---

[4] In other cases where a class representative's involvement has been as rigorous as in this case, Courts routinely approve service award requests that are significantly higher than what the Named Plaintiffs are seeking here. *See, e.g., Loudermilk Servs., Inc. v. Marathon Petroleum Co. LLC*, 623 F. Supp. 2d 713, 727 (S.D. W. Va. 2009) (awarding each of the five class representatives a $25,000 service award); *Temp. Servs., Inc. v. Am. Int'l Grp., Inc.*, No. 3:08-CV-00271-JFA, 2012 WL 4061537, at *6 (D.S.C. Sept. 14, 2012) (approving $20,000 service awards to each of the two class representatives); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 400 (D.D.C. 2002) (approving a service award of $25,000 to each of the three class representatives in the case); *Van Vranken v. Atl. Richfield Co. .,* 901 F. Supp. 294, 299–300 (N.D.Cal.1995) (awarding $50,000

and should be awarded.  *Singleton*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (finding in FCRA case that "relatively modest incentive payment of $2,500 to each Named Plaintiff is reasonable").

## V.     ADMINISTRATION EXPENSES SHOULD BE REIMBURSED FROM FUND.

ALCS has been serving as the Settlement Administrator and has agreed to cap its costs through distribution of the settlement amount to Settlement Class members at $14,000.[5]  These costs include those for mailing notice to the Class, establishing and maintaining the Settlement Website and toll-free telephone support, responding to Class Member inquiries, and should final approval be granted, issuing and mailing payments to the Class Members.  These expenses are necessarily incurred and should be paid from the common fund.  "The[] costs of paying the claims administrator, processing the claims, providing notice to the class, and generally administering the settlement is typically deducted from the settlement fund."  *Newberg on Class Actions* § 12.20 (5th ed.).  *See also McDaniels v. Westlake Servs., LLC*, 2014 WL 556288, at *15 (D. Md. Feb. 7, 2014) (awarding costs of notice and administration to claims administrator); *Singleton*, 976 F. Supp. 2d at 690 (D. Md. 2013) (same).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion for Attorneys' Fees, Costs and Named Plaintiff Service Awards.

---

to the named plaintiff); *In re Dunn & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. 366, 374 (S.D. Ohio 1990) (awarding $55,000 each to two named plaintiffs); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) (approving a service award of $20,000 to each of the three class representatives in the case); *Garett v. Morgan Stanley DW Inc.,* Civ. A. No. 04–1858 (S.D. Cal. Sept. 12, 2006) (order granting final approval) (awarding named plaintiffs service awards of $20,000 each).

[5] To the extent that the Settlement Administrator costs exceed $14,000, the parties have agreed that those costs may be reimbursed from amounts remaining from uncashed checks as to not decrease the amount paid to Settlement Class Members.

Respectfully submitted,

**BERGER & MONTAGUE, P.C.**

By: <u>/s/ *John G. Albanese*</u>
                  Counsel

Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com

E. Michelle Drake (MN Bar No.0387366)*
John G. Albanese (MN Bar No.0395882)*
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on the 12th day of December, 2017, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record:

S. Mohsin Reza (Bar No. 19015)
TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500
Tysons Corner, Virginia 22182
Telephone: (703) 734-4334
Facsimile: (703) 734-4340
mohsin.reza@troutmansanders.com

Ronald I. Raether, Jr.
TROUTMAN SANDERS LLP
5 Park Plaza Ste 1400
Irvine, CA 92614
Telephone: (949) 622-2722
Facsimile: (949) 622-2739
ronald.raether@troutmansanders.com

Timothy J. St. George
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
Facsimile:  (804) 698-601 3
tim.stgeorge@troutmansanders.com

*Counsel for Defendant*

/s/ John G. Albanese
E. Michelle Drake (MN Bar No.0387366)*
John G. Albanese (MN Bar No.0395882)*
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

*Counsel for Plaintiffs*