**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | | |
|---|---|---|
| JAMES L. WILLIAMS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 8:16-cv-00058-PX |
| | ) | |
| CORELOGIC RENTAL PROPERTY | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT [UNOPPOSED]**

**MEMORANDUM IN SUPPORT**

**TABLE OF CONTENTS**

FACTUAL BACKGROUND ........................................................................................ 1

   I.  CASE HISTORY .................................................................................... 2

   II.  SETTLEMENT OVERVIEW ................................................................ 3

   III. DISSEMINATION AND REACTION TO THE SETTLEMENT NOTICE .............. 4

   IV. SETTLEMENT PROCEEDS DISTRIBUTION METHOD ............................. 5

ARGUMENT .......................................................................................................... 6

   I.  THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................. 6

      A.  The Settlement Was Fairly Negotiated at Arms-Length after Substantial Discovery with Experienced Counsel on Both Sides ............................... 7

      B.  The Settlement Provides Meaningful Benefits to the Settlement Class ......... 9

         1.  The Settlement Provides Substantial Benefits ............................. 9

         2.  Additional Litigation Would be Time Consuming and Expensive ........... 11

         3.  Solvency of the Defendant ................................................. 12

         4.  The Settlement is Supported by the Class ................................ 12

   II  Plaintiffs' Request for Attorneys' Fees, Costs, Named Plaintiff Service Awards, and Settlement Administration Costs Should Be Approved ............................... 14

CONCLUSION ....................................................................................................... 14

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................................6

*Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 1307 (D. Or. 2008) ...............................9

*Bleynat v. Trans Union, LLC*, No. 11-cv-218, 2012 WL 2576646 (W.D.N.C. July 3, 2012) .......10

*Brunson v. Louisiana-Pacific Corp.,* 818 F. Supp. 2d 922 (D.S.C. 2011) .........................7, 11, 12

*Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201 (E.D. Pa. 2011) ...............................11

*Dalton v. Capital Assoc. Indus.*, 257 F.3d 409 (4th Cir. 2001) ...............................................11

*Domonoske v. Bank of Am., N.A.*, 705 F. Supp. 2d 515 (W.D. Va. 2010) ...............................10

*Domonoske v. Bank of Am.*, 790 F. Supp. 2d 474 (W.D. Va. 2011) ..........................................9

*Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825 (E.D.N.C. 1994) ......10

*In re Farmers Ins. Co. Inc. FCRA Litig.*, 741 F. Supp. 2d 1211 (W.D. Okla. Sept. 20, 2010) ......9

*In re Jiffy Lube Sec. Litig.*, 927 F.2d 155 (4th Cir. 1991) ...................................................7, 9

*In re Mi Windows and Doors Inc. Prod. Liab. Litig.*,
      MDL No. 2333, 2015 WL 12850547 (D.S.C. July 22, 2015) ........................................8

*In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221 (S.D. W. Va. 2005) .....................................12

*In re The Mills Corp Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) .......................................8, 12

*In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ......................10

*Jenkins v. Equifax Info. Servs., LLC,* No. 15-cv-443, ECF No. 30 (E.D. Va., Apr. 27, 2016) ......10

*Kirven v. Central States Health & Life Co. of Omaha*, No. 3:11-2149-BMS,
      2015 WL 1314086, (D.S.C. Mar. 23, 2015) .............................................................12

*Nwabueze v. AT & T Inc.*, No. C 09-01529 SI,
      2013 WL 6199596, (N.D. Cal. Nov. 27, 2013) .........................................................13

*Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241 (E.D. Pa. 2011) .........................................11

*S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419 (D.S.C. 1990) ...................................................6

*S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335 (D.S.C. 1991) .......................................................8

*Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC,
    2016 WL 1625835 (D. Md. Apr. 25, 2016) ..................................................6

*Singleton v Domino's Pizza, LLC,* 976 F. Supp. 2d 665 (D. Md. 2013) ...............................8

*Stokes v. RealPage, Inc.*, No. 15-cv-1520, ECF No. 63 (E.D. Pa. February 6, 2018) ..............10

*Watkins v. Hireright, Inc.,* No. 13-CV-1432-BAS-BLM,
    2016 WL 5719812 (S.D. Cal. Sept. 30, 2016) .................................................10

*Williams v. First Nat'l Bank*, 216 U.S. 582 (1910) ...........................................................6

Statutes

Title 15, United States Code

    Section 1681, *et seq.* ............................................................................ *passim*

Rules

Federal Rules of Civil Procedure

    Rule 23, *et seq.* ................................................................................... *passim*

Other Authority

*Newberg & Conte, Newberg on Class Actions* § 11.41 (3d ed. 1992) ..................................7

Plaintiffs, on behalf of themselves and the Settlement Class, seek final approval of a class action Settlement with CoreLogic Rental Property Solutions, LLC which guarantees a monetary payment of $132 for over 2,000 Class members and also provides meaningful non-monetary relief. The Settlement was preliminarily approved as "fair, reasonable, and adequate" by the Court on October 5, 2017.  (ECF No. 107.)  Notice has since been sent to the Settlement Class.  No Settlement Class Members opted out of the settlement and there were no timely objections to the Settlement.  The lone, unrepresented class member who expressed dissatisfaction with the settlement submitted a belated statement that was not filed with the Court and evinces a fundamental misunderstanding regarding the claims involved in the Settlement and her release.

The Settlement is fair, reasonable, and adequate, providing significant monetary recovery for each Settlement Class member that is in line with or exceeds relief approved in other settlements with comparable claims along with non-monetary relief that will prevent the alleged violation from recurring.  Accordingly, Plaintiffs respectfully request that the Court (1) grant final approval and enter the Final Approval Order, attached hereto as Exhibit A; (2) enter the Injunctive Relief Order, attached hereto as Exhibit B; (3) dismiss all of Plaintiffs' and Settlement Class members' claims with prejudice; and (4) award the requested attorneys' fees, costs, Named Plaintiffs' service awards, and settlement administration costs.  Defendant does not oppose the relief sought by this Motion.

## FACTUAL BACKGROUND

Plaintiffs provide only a brief overview of the case, and hereby incorporate the additional facts contained in the Memorandum in Support of Plaintiffs' Motion for Preliminary Approval of Proposed Class Action Settlement.  (ECF No. 103.)

1

## I.      CASE HISTORY

Plaintiffs claim that Defendant, a consumer reporting agency, violated the Fair Credit Reporting Act ("FCRA") by failing to clearly and accuracy disclose the sources of the information listed in a consumer's file disclosure, as required by 15 U.S.C. § 1681g(a)(2).  Plaintiffs allege that Defendant's file disclosures incorrectly stated that the information listed in Plaintiffs' disclosures were from a "Search Report by Crimcheck America," which was a tradename of a predecessor entity to Defendant.  For this claim, Plaintiffs sought statutory damages of $100-$1000 as provided by the FCRA for willful violations of the statute.  15 U.S.C. § 1681n.[1]

Defendant answered the operative complaint, and the case proceeded to discovery. Discovery was contentious, and the parties engaged in numerous meet-and-confer sessions and had to seek court intervention on multiple occasions to resolve disputes including fully briefing a motion to compel related to documents withheld by Defendant.   (ECF No. 79).   Plaintiffs conducted five depositions, including four current employees and one former employee of Defendant.  Defendant deposed both Plaintiffs.  Defendant produced thousands of documents related to the claims at issue and also produced a substantial sample of its database, which Plaintiffs' expert analyzed.  Plaintiffs likewise responded to Defendant's discovery requests. Defendant also served subpoenas on various third parties.

Toward the end of discovery, the Parties agreed to mediate the case in June 2017 with well-respected and experienced FCRA mediator Rodney Max of Upchurch Watson White & Max. After an all-day mediation, the Parties reached a class-wide resolution.  The Parties' settlement

---

[1] Plaintiffs also alleged that Defendant had violated 15 U.S.C. § 1681e(b) by generating inaccurate reports and Plaintiff Hernandez alleged that Defendant violated 15 § U.S.C. 1681i for failing to reinvestigate his dispute.  These claims were resolved on an individual basis.

which was ultimately formalized in the Settlement Agreement ("SA," ECF No. 103-3) and submitted to the preliminary approved by the Court.  (ECF No. 103.)

## II.    SETTLEMENT OVERVIEW

On October 5, 2017, the Court granted preliminary approval to the Settlement and conditionally certified the "File Disclosure Settlement Class" defined as:

> All persons residing in the United States of America (including its territories and Puerto Rico) who, from March 24, 2014 through October 5, 2017, made a request pursuant to Section 609(a) of the FCRA [15 U.S.C. § 1681g(a)] for a copy of their consumer files and received a response containing at least one criminal record in their files, and whose file disclosures also contained one or more of the following phrases: "Statewide Criminal Search Report by Crimcheck America," "Multistate Criminal Search Report by Crimcheck America," or "Sex Offender Search Report by Crimcheck America."

> The File Disclosure Settlement Class does not include Defendant's officers, directors, and employees; Defendant's attorneys, Named Plaintiffs' attorneys; any Judge overseeing or considering the approval of the Settlement together with members of their immediate family and any judicial staff.

(ECF No. 107.)  The Settlement Class consists of 2,264 consumers.  The Settlement creates a common fund of $595,000 to be distributed *pro rata* by check to be made automatically to Settlement Class members.  (SA ¶ 4.3.2.)  Should the full amounts requested for fees, costs, Named Plaintiffs' service awards, and settlement administration costs be granted, and each Settlement Class member will receive approximately $132.

In addition to this monetary relief, the Settlement Agreement also provides for injunctive relief.  As part of final approval, the Parties request that the Court enter the Injunctive Relief Order submitted with this motion, which will prohibit Defendant from including the phrases "Statewide Criminal Search Report by Crimcheck America," "Multistate Criminal Search Report by Crimcheck America," or "Sex Offender Search Report by Crimcheck America" in the criminal

record section of file disclosures sent to consumers in response to their request for a copy of their consumer disclosure.

In exchange for the monetary and non-monetary relief, Settlement Class members will release claims that they have under 15 U.S.C. § 1681g(a) of the FCRA or state law equivalents. (*Id.* ¶ 6.1.1). The Settlement Class member release does not include claims under any other section of the FCRA. For instance, claims related to the accuracy of reports under 15 U.S.C. § 1681e(b) or to Defendant's response to consumer disputes under 15 U.S.C. § 1681i are not released.

The Court appointed Kelly & Crandall, PLC and Berger & Montague, P.C. as Class Counsel, appointed Named Plaintiffs as Class Representatives, appointed American Legal Claims Services, LLC ("ALCS") as Settlement Administrator, and directed the parties to provide notice to the Settlement Class. (*Id.* at 3-4.) The Court furthered ordered an objection deadline of no later than 60 days after mailing of the settlement notice and ordered that all objections be filed with the Court and concurrently served on the Settlement Administrator. (*Id.* at 6.) The Court scheduled a final approval hearing for March 5, 2018 at 2:00 p.m. (*Id.* at 7.)

## III.    DISSEMINATION AND REACTION TO THE SETTLEMENT NOTICE

Following the Court's Order, ALCS mailed the Court-approved class notice ("Notice") on October 27, 2017. (Declaration of American Legal Claim Services ("ALCS Decl.") ¶ 5.) The Notice advised Settlement Class members on the essential details of the Settlement, the requested amounts for attorneys' fees, costs, and Named Plaintiffs' service awards, the postmark deadline for claim forms and opt-outs, the toll-free number of the Settlement Administrator, and the location of a website ("Settlement Website") where Settlement Class members could access the entire Settlement Agreement, FAQ, and relevant court records. (*Id.* Ex. A.) Any Notice that was returned undeliverable with a forwarding address was promptly re-mailed and for those without a

forwarding address, ALCS conducted address searches to locate new addresses.  (*Id*. ¶¶ 6-7.)  In total, the Notice was successfully mailed to addresses associated with 97.35% of Settlement Class Members.  (*Id.* ¶ 8.)

The Notice provided Settlement Class Members with information about their rights to object to or opt out of the Settlement.  (*Id.* Ex. A.)  The Notice informed Settlement Class Members of the deadline for mailing objections—December 26, 2017—as well as the deadline for mailing opt-out or exclusion requests—January 5, 2018.  (*Id.*)

On December 12, 2017, Plaintiffs filed their motion for Class Counsel's Attorney's Fees, Costs, and Named Plaintiffs' Service Awards and supporting papers which was posted the next day on the settlement website.  (ECF Nos. 108-111).  There have been no objections to Plaintiffs' requests.

Out of 2,264 Settlement Class members who were sent notice, none have opted out of the Settlement, and there was only one untimely complaint from an unrepresented class member who postmarked her statement on December 30, 2017 and did not file it with the Court as required by the preliminary approval order.  (ALCS Decl. ¶¶ 11-12 & Ex. B.)

## IV.   SETTLEMENT PROCEEDS DISTRIBUTION METHOD

Upon Court approval, the Settlement Fund will be distributed pro rata by checks to be issued and postmarked by ALCS within 30 days after the Settlement takes effect.  (SA ¶ 5.3.1.)  Assuming that all requested deductions for attorneys' fees, costs, incentive awards, and administration costs are granted, the value of the check each Settlement Class member will receive will be approximately $132.  Any checks that remained uncashed 90 days after the date of mailing or checks that are returned as undeliverable shall revert to the Settlement Escrow Account and will then be used to reimburse Defendant for costs of class notice and administration under Sections

4.2.3 and 4.2.4 of the Settlement Agreement and the Settlement Administrator for any costs that exceed $14,000.  (*Id. ¶* 4.2.5.)  If any funds remain after this reimbursement, the remaining funds to will be sent to Public Justice, a non-profit entity, as a *cy pres* award.  (*Id.  ¶* 5.3.1.)

## ARGUMENT

## I.     THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

There is a strong judicial policy within this Circuit favoring resolution of litigation prior to trial. *See, e.g., S.C. Nat'l Bank v. Stone*, 749 F. Supp. 1419, 1423 (D.S.C. 1990) ("The voluntary resolution of litigation through settlement is strongly favored by the courts.") (citing *Williams v. First Nat'l Bank*, 216 U.S. 582 (1910)).  Settlement spares the litigants the uncertainty, delay, and expense of a trial and appeals while simultaneously reducing the burden on judicial resources.  *Id.* ("In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strains such litigation imposes upon already scarce judicial resources.")

Settlement approval of a Rule 23 class action settlement is a two-step process.  At the first stage, the court determines whether the settlement is "within the range of possible approval." *Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 WL 1625835, at *2 (D. Md. Apr. 25, 2016). The court also conducts a "preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Federal Rule of Civil Procedure 23(a) and at least one of the subsections of Rule 23(b)."  *Id.* at *2 (D. Md. Apr. 25, 2016) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).  If the settlement is preliminarily approved, a final approval hearing will be scheduled and notice will be sent to the proposed settlement class regarding the settlement.  *Id.*  "At the second stage, following the final fairness hearing, final approval will be

granted if the parties establish that a settlement is fair and adequate."  *Id.*; *see also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991)).

Based on the reaction of the Settlement Class, and the factors discussed below, the Court should grant final approval of the parties' settlement.

### A.      The Settlement Was Fairly Negotiated at Arms-Length after Substantial Discovery with Experienced Counsel on Both Sides.

A class settlement is fair if it "was reached as a result of good faith bargaining at arm's length, without collusion."  *Jiffy Lube*, 927 F.2d at 159.  In the Fourth Circuit, courts should consider the following factors when analyzing a proposed class settlement for fairness: (1) the posture of the case at the time the proposed settlement was reached; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the type of case at issue.  *Id.* at 158-59.  "[A] presumption of fairness exists where: (1) the settlement is reached through arms-length bargaining; (2) investigation and discovery are sufficient to allow counsel and the court to act intelligently; (3) counsel is experienced in similar litigation; and (4) the percentage of objectors is small."  *Brunson v. Louisiana-Pacific Corp.,* 818 F. Supp. 2d 922, 927 (D.S.C. 2011) (citing Newberg & Conte, Newberg on Class Actions § 11.41 (3d ed. 1992)).  The settlement here easily meets this threshold and should be approved.

The Settlement is fair.  This case was thoroughly litigated and discovery was contentious and extensive.  The Parties took seven depositions, produced and reviewed thousands of documents, and conducted meaningful database discovery, with Plaintiffs engaging an expert to review Defendant's database sample.  The Parties engaged in numerous meet and confers, and discovery disputes regarding court intervention on multiple occasions, including a fully briefed and argued motion to compel.  (ECF No. 79.)

Through this robust discovery, Plaintiffs and Defendant were able to fully assess the strength of their respective claims and defenses prior to mediation and eventual settlement of this case.   The Parties were well-apprised of the facts and each side's position on litigation and settlement prospects.   The settlement was reached through arms'-length and contentious negotiations with the assistance of a highly respected and experienced mediator.   These circumstances all weigh strongly in favor of approval.   *In re Mi Windows and Doors Inc. Prod. Liab. Litig.*, MDL No. 2333, 2015 WL 12850547, at *9 (D.S.C. July 22, 2015) (circumstances of settlement negotiations, particularly the assistance of mediators involved, weigh in favor of finding the settlement fair); *In re The Mills Corp Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) (facts as to how settlement was reached after mediation and subsequent negotiations, demonstrated fairness of settlement); *Singleton v Domino's Pizza, LLC,* 976 F. Supp. 2d 665, 679 (D. Md. 2013) (finding settlement to be fair when parties had exchanged written discovery and "all parties had a clear view of the strengths and weaknesses of their respective positions").

Moreover, counsel for both parties are highly experienced in consumer class action litigation and FCRA litigation in particular.   (*See* Drake Decl., ECF No. 111; Kelly Decl., ECF No. 110.)   Class Counsel endorse the settlement as fair and adequate under the circumstances, given counsel's extensive experience, their views should afforded substantial consideration in determining whether a class settlement is fair and adequate.   *S.C. Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991) ("[t]he negotiations in this case were conducted by able counsel who have a substantial amount of litigation experience in this sort of complex [] action. . . . it is therefore appropriate for the court to give significant weight to the judgment of class counsel.").

**B.  The Settlement Provides Meaningful Benefits to the Settlement Class.**

When evaluating the adequacy of a settlement, the Court may consider the "relative strength of the plaintiffs' case on the merits" and "the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial."  *In re Jiffy Lube Sec. Litig.*, 927 F.2d at 159.  "Essentially, the court should weigh the benefits of the settlement to the class against the strength of the defense . . . ." *Domonoske v. Bank of Am.*, 790 F. Supp. 2d 474 (W.D. Va. 2011).  Here, the settlement provides significant monetary and nonmonetary relief to the Settlement Class, avoids the risks of further complex litigation, and has been well received by Settlement Class Members. This all weighs in favor of a finding of adequacy.

**1.  The Settlement Provides Substantial Benefits.**

For their claims under 15 U.S.C. § 1681g(a) Plaintiffs statutory damages under the FCRA, which provides for damages of between $100 and $1,000 if the plaintiff can prove the violation was willful. 15 U.S.C. § 1681n(a)(1).  The FCRA itself does not provide any guidance to courts in choosing the appropriate recovery for a statutory violation, see 15 U.S.C. §1681n(a)(1), but in determining the amount of statutory damages to impose pursuant to the FCRA, courts have looked to "the importance, and hence the value, of the rights and protections" at issue in the case.  *Ashby v. Farmers Ins. Co. of Oregon*, 592 F. Supp. 2d 1307, 1318 (D. Or. 2008); *In re Farmers Ins. Co. Inc. FCRA Litig.*, 741 F. Supp. 2d 1211, 1224 (W.D. Okla. Sept. 20, 2010).  The statutory damages range applies to all FCRA violations.  Given the breadth of violations that fall within the range, it is unlikely that Plaintiff would achieve an award of statutory damages which, on a per person basis, would substantially exceed $100.  Here, should the Court approve the requested attorneys' fees, costs, Named Plaintiff service awards, and administration expenses, Settlement Class members will each automatically receive $132, which is above the $100 minimum provided for by the

FCRA.  *In re Toys R Us-Delaware, Inc. FACTA Litig.*, 295 F.R.D. 438, 453-4 (C.D. Cal. 2014) ("Viewed from the perspective of each class member, had the class member sued Toys individually and proved that it acted wil[l]fully, he or she could have recovered between $100 and $1,000 in statutory damages . . . A $5 or $30 award, therefor, represents 5% to 30% of the recovery that might have been obtained. This is not a *de minimus* amount . . . the court finds that the amount of the settlement weighs in favor of approval."); *see also Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 833 (E.D.N.C. 1994) (approving settlement representing approximately 5% of plaintiffs' damages as adequate and citing cases in support).

The $132 recovery that each class member will receive is also in line with or exceeds the recoveries in other similar settlements for claims under § 1681g(a). *See, e.g., Watkins v. Hireright, Inc.,* No. 13-CV-1432-BAS-BLM, 2016 WL 5719812, at *1 (S.D. Cal. Sept. 30, 2016) (approving settlement that provided for payments $25.02 to settle claims under § 1681g(a)); *Stokes v. RealPage, Inc.*, No. 15-cv-1520, ECF No. 63 (E.D. Pa. February 6, 2018) (approving settlement that provides for $200 gross recovery per class member *prior* to deductions for attorneys' fees and costs, administration expenses, and class representative service awards); *Jenkins v. Equifax Info. Servs., LLC,* No. 15-cv-443, ECF No. 30 (E.D. Va., Apr. 27, 2016) (providing for credit monitoring service but no other monetary relief for settlement of claim under § 1681g).

Moreover, the settlement provides valuable non-monetary relief in the form of the injunctive relief, which would likely have been unattainable through litigation, as most courts have held that there is no private right of action under the FCRA for injunctive relief. *See*, *e.g.*, *Domonoske v. Bank of Am., N.A.*, 705 F. Supp. 2d 515, 518 (W.D. Va. 2010); *Bleynat v. Trans Union, LLC*, No. 11-cv-218, 2012 WL 2576646, *2 (W.D.N.C. July 3, 2012).

The benefits provided under the settlement are even more significant when viewed in light of the risks of continued litigation. Beyond the uncertainty inherent in class actions, FCRA cases face specific risks.  The FCRA is not a strict liability statute.  *Dalton v. Capital Assoc. Indus.*, 257 F.3d 409, 417 (4th Cir. 2001).  A FCRA plaintiff can recover only where the defendant has acted negligently or willfully, and where the defendant's violation was at most negligent, recovery is limited to actual damages. 15 U.S.C. §§ 1681n(a)(1), o(a)(1).  Because Plaintiffs did not allege actual damages for their § 1681g(a) claims, in order to recover anything in this case, they would have to prove not only that Defendant violated the FCRA, but that it did so willfully.  Plaintiffs expect that if litigation were to continue, Defendant would have contested the question of willfulness vigorously and, while Plaintiffs believe those arguments could have been overcome, they also acknowledge that the law on this issue is not clear, which weighs in favor of settlement approval.  *Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 212 (E.D. Pa. 2011) (proving willfulness in FCRA case is "a high hurdle to clear," and weighs in favor of settlement approval); *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 253 (E.D. Pa. 2011) (willfulness presented "considerable – albeit not insurmountable – risks" and weighed in favor of final approval).

The settlement provides considerable, direct benefits to the Settlement Class, and in light of the risks presented by further litigation, supports final approval.

### 2.  Additional Litigation Would be Time Consuming and Expensive.

Procedurally, much remained to be done before this case would have reached a resolution in litigation.  Expert discovery, contested dispositive motions, and Plaintiffs' motion for class certification, all had yet to occur when the settlement was reached.  In addition, there would have been a trial and likely, appeals.  Each of these stages imposes delay and expense, thus settling now is advantageous for all parties, and conserves the resources of the Court.  *Brunson*, 818 F. Supp.

11

2d at 927 ("The Settlement affords a substantial and immediate remedy for the Class Members while obviating the need for further expensive and time-consuming discovery and motion practice; a lengthy, uncertain and expensive trial; and appeals on numerous complex legal and factual issues."); *Kirven v. Central States Health & Life Co. of Omaha*, No. 3:11-2149-BMS, 2015 WL 1314086, at *6 (D.S.C. Mar. 23, 2015) ("This factor is based on a sound policy of conserving the resources of the Court and the certainty that avoiding unnecessary and unwarranted expenditure of resources and time benefits all parties.") (internal quotations omitted).

### 3.  Solvency of the Defendant.

"The solvency of the defendant may be relevant to determining the adequacy of a settlement if it appears that the defendant would not be able to satisfy a litigated judgment." *In re Serzone Prod. Liab. Litig.*, 231 F.R.D. 221, 245 (S.D. W. Va. 2005).  Defendant's solvency is not in question here.  Thus, in this case, as "the remaining factors weigh in favor of finding the Settlement to be adequate, this factor may be given little weight." *Id.*

### 4.   The Settlement is Supported by the Class.

A lack of meaningful opposition to the settlement further demonstrates the settlement's fairness and adequacy.  *Brunson*, 818 F. Supp. 2d at 927; *In re The Mills*, 265 F.R.D. at 257-58 ("an absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.").  As noted above, out of more than 2,200 Settlement Class members, there were <u>zero</u> opt-outs and one belated, procedurally improper complaint.

The lone complaint about the settlement should be overruled for a number of reasons.  First, the statement was not filed with the Court as required under the Settlement Agreement and as ordered by the Court in preliminarily approving the settlement.  Second, as the complaining class member recognizes, she submitted her complaint after the objection deadline which was clearly

disclosed in the Notice that she received.  Her objection can be overruled on procedural grounds alone.  *Nwabueze v. AT & T Inc.*, No. C 09-01529 SI, 2013 WL 6199596, at *7 (N.D. Cal. Nov. 27, 2013) (overruling objections as procedurally deficient).

Not only is the objection procedurally infirm, it also lacks substance.  Based on the vague statement submitted, it appears that the complaining class member misunderstands the terms of the settlement.  While the statement is vague and unclear,[2] the thrust of the objection appears to be that the complaining class member believes Defendant issued an inaccurate report about her. She appears to claim that Defendant reported her as having committed a criminal offense whereas other background reports have not reported her as having committed those criminal offenses.  This complaint reflects a misunderstanding of the Settlement and the claims at issue.  The Settlement resolves and releases a narrow claim involving the correct identification of the source of the criminal information on Defendant's report.  The Settlement, however, does not release claims for inaccurate reporting of criminal records, and indeed does not release any claims related to allegations of erroneous reporting whatsoever.  Accordingly, because her complaint is based on an incorrect premise about the nature of the claims released, it should be overruled.

In sum, the overwhelming majority of the Class members support the settlement, and the fact that only a single individual out of thousands voiced disapproval is indicative of the fairness of the settlement, particularly when that disapproval was based on a misunderstanding of the conduct at issue.  Thus, this factor supports final approval.

---

[2] After receiving the letter from Priscilla Saxer, which did not contain a phone number, Class Counsel sent a letter to Ms. Saxer seeking more information regarding her complaint. (Declaration of John G. Albanese ¶ 4.)  Class Counsel then received voicemail from Ms. Saxer stating that she was unable to speak over the phone due to her life circumstances.  After receiving the voicemail, Class Counsel sent a follow-up letter explaining that the Settlement did not cover claims related to inaccurate reporting of criminal records, and referred her to her local bar association.  Class Counsel has not had any further contact with Ms. Saxer.  *Id*. at ¶ 5.

II.     **Plaintiffs' Request for Attorneys' Fees, Costs, Named Plaintiff Service Awards, and Settlement Administration Costs Should Be Approved.**

On December 12, 2017, two weeks before the deadline for objections, Plaintiffs filed their motion seeking $272,152 in attorneys' fees and costs, Named Plaintiffs' service awards of $2,500 each, and settlement administration costs of $14,000 to be paid from the Settlement fund.  (ECF Nos. 108-111.)  The amounts to be sought were provided in the Notice mailed to Settlement Class Members, and Plaintiffs' motion and supporting papers were posted to the settlement website shortly after filing.  No Settlement Class Member has objected to any portion of Plaintiffs' requests which is further evidence of the reasonableness of the requests.  Plaintiffs' requests for attorneys' fees, costs, Named Plaintiffs' service awards, and settlement administration costs should be approved.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their motion for final approval of the proposed Settlement and (1) finally approve the Settlement Agreement enter the Final Approval Order; (2) enter the Injunctive Relief Order; (3) dismiss all of Plaintiffs' and Settlement Class Members' claims with prejudice; and (4) award the requested attorneys' fees, costs, Named Plaintiffs' service awards, and settlement administration costs.

Respectfully submitted,

**BERGER & MONTAGUE, P.C.**

By: /s/ *John G. Albanese*
                Counsel

Kristi Cahoon Kelly, Esq. (No. 07244)
KELLY & CRANDALL, PLC
4084 University Drive, Suite 202A
Fairfax, Virginia 22030
(703) 424-7576 Telephone
(703) 591-0167 - Facsimile
E-mail:  kkelly@kellyandcrandall.com

E. Michelle Drake (MN Bar No.0387366)*
John G. Albanese (MN Bar No.0395882)*
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of February, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following counsel of record:

S. Mohsin Reza (Bar No. 19015)                    Ronald I. Raether, Jr.
TROUTMAN SANDERS LLP                             TROUTMAN SANDERS LLP
1850 Towers Crescent Plaza, Suite 500            5 Park Plaza Ste 1400
Tysons Corner, Virginia 22182                    Irvine, CA 92614
Telephone: (703) 734-4334                        Telephone: (949) 622-2722
Facsimile: (703) 734-4340                        Facsimile: (949) 622-2739
mohsin.reza@troutmansanders.com                  ronald.raether@troutmansanders.com

Timothy J. St. George
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, VA 23219
Telephone: (804) 697-1254
Facsimile:  (804) 698-601 3
tim.stgeorge@troutmansanders.com

*Counsel for Defendant*

/s/ John G. Albanese
E. Michelle Drake (MN Bar No.0387366)*
John G. Albanese (MN Bar No.0395882)*
BERGER & MONTAGUE, P.C.
43 SE Main Street, Suite 505
Minneapolis, MN 55414
Telephone: (612) 594-5999
emdrake@bm.net
jalbanese@bm.net

*admitted *pro hac vice*

*Counsel for Plaintiffs*

16

# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Greenbelt Division**

| | | |
|---|---|---|
| JAMES L. WILLIAMS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action 8:16-cv-00058-PX |
| | ) | |
| CORELOGIC RENTAL PROPERTY SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>FINAL APPROVAL ORDER</u>

This matter, having come before the Court on Plaintiffs' Motion for Final Approval of the proposed class action settlement with Defendant, CoreLogic Rental Property Solutions, LLC; the Court having considered all papers filed and arguments made with respect to the settlement, and having provisionally certified, by Order entered October 5, 2017 a "File Disclosure Settlement Class," and the Court, being fully advised finds that:

1.      Certification for settlement purposes of the File Disclosure Settlement Class, as defined by the Settlement Agreement proposed by the Parties in this case (Dkt. No. 103-3), is appropriate pursuant to Federal Rules of Civil Procedure 23(a) and 23(b).

2.      Notice to the File Disclosure Settlement Class required by Rule 23(e) of the Federal Rules of Civil Procedure has been provided in accordance with the Court's Preliminary Approval Order.  Such Notice has been given in an adequate and sufficient manner; constitutes the best notice practicable under the circumstances; and satisfies Rule 23(e) and due process.

3.      The Defendant has timely filed notification of this settlement with the appropriate officials pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715.  The

Court has reviewed such notification and accompanying materials, and finds that the Defendant's notification complies fully with the applicable requirements of CAFA.

4.    The Settlement Agreement was arrived at as a result of arms-length negotiations conducted in good faith by counsel for the parties and is supported by the parties.

5.    The settlement as set forth in the Settlement Agreement is fair, reasonable, and adequate to the members of the File Disclosure Settlement Class in light of the complexity, expense and duration of litigation and the risks involved in establishing liability, damages and in maintaining the class action through trial and appeal.

6.    The relief provided under the settlement constitutes fair value given in exchange for the release of claims.

7.    No persons have validly excluded themselves from the File Disclosure Settlement Class in accordance with the provisions of the Preliminary Approval Order.

8.    The parties and each Class Member have irrevocably submitted to the exclusive jurisdiction of this Court for any suit, action, proceeding, or dispute arising out of the Settlement Agreement.

9.    It is in the best interests of the parties and the Class Members and consistent with principles of judicial economy that any dispute between any File Disclosure Settlement Class Member (including any dispute as to whether any person is a File Disclosure Settlement Class Member) and any Released Party which in any way relates to the applicability or scope of the Settlement Agreement or the Final Judgment and Order should be presented exclusively to this Court for resolution by this Court.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:

10.     This action is a class action against Defendant, CoreLogic Rental Property Solutions, LLC, on behalf of a class of consumers that has been defined as follows:

> **File Disclosure Settlement Class**:  All persons residing in the United States of America (including its territories and Puerto Rico) who, from March 24, 2014 through the date when the Court enters its Preliminary Approval Order, made a request pursuant to Section 609(a) of the FCRA [15 U.S.C. § 1681g(a)] for a copy of their consumer file and received a response containing at least one criminal record in their file, and whose file disclosure also contained one or more of the following phrases: "Statewide Criminal Search Report by Crimcheck America"; "Multistate Criminal Search Report by Crimcheck America"; or "Sex Offender Search Report by Crimcheck America."

The File Disclosure Settlement Class does not include Defendant's officers, directors, and employees; Defendant's attorneys; Named Plaintiffs' attorneys; any Judge overseeing or considering the approval of the Settlement together with members of their immediate family and any judicial staff.

11.     The Settlement Agreement submitted by the parties for the File Disclosure Settlement Class is finally approved pursuant to Rule 23(e) of the Federal Rules of Civil Procedure as fair, reasonable, and adequate and in the best interests of the File Disclosure Settlement Class.  The Settlement Agreement shall therefore be deemed incorporated herein and the proposed settlement is finally approved and shall be consummated in accordance with the terms and provisions thereof, except as amended or clarified by any subsequent order issued by this Court.

12.     This action is hereby dismissed on the merits, with prejudice and without costs.

13.     As agreed by the parties in the Settlement Agreement, upon the Effective Date, the Released Parties shall be released and discharged in accordance with the Settlement Agreement.

14.     Without affecting the finality of this judgment, the Court hereby reserves and retains jurisdiction over this settlement, including the administration and consummation of the settlement.  In addition, without affecting the finality of this judgment, the Court retains exclusive jurisdiction over Defendant and each member of the File Disclosure Settlement Class for any suit, action, proceeding or dispute arising out of or relating to this Order, the Settlement Agreement or the applicability of the Settlement Agreement.  Without limiting the generality of the foregoing, any dispute concerning the Settlement Agreement, including, but not limited to, any suit, action, arbitration or other proceeding by a File Disclosure Settlement Class member in which the provisions of the Settlement Agreement are asserted as a defense in whole or in part to any claim or cause of action or otherwise raised as an objection, shall constitute a suit, action or proceeding arising out of or relating to this Order.  Solely for purposes of such suit, action or proceeding, to the fullest extent possible under applicable law, the parties hereto and all File Disclosure Settlement Class are hereby deemed to have irrevocably waived and agreed not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of this Court, or that this Court is, in any way, an improper venue or an inconvenient forum.

15.     Upon consideration of Class Counsel's application for fees and costs and other expenses, the Court awards $277,152 as reasonable attorneys' fees and reimbursement for reasonable out-of-pocket expenses.

16.     Upon consideration of the application for an individual settlement and service award, the Named Plaintiffs, James L. Williams and Hector D. Hernandez, are each awarded the sum of two thousand five hundred dollars ($2,500), to be paid from the Settlement Fund, in

consideration of their individual claims against the Defendant and for the service they have performed for and on behalf of the File Disclosure Settlement Class.

17.     The Court finds, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directs the Clerk to enter final judgment.

BY THE COURT:

Dated: _____          _____

HONORABLE PAULA XINIS
UNITED STATES DISTRICT JUDGE

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Greenbelt Division**

| | | |
|---|---|---|
| JAMES L. WILLIAMS, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action 8:16-cv-00058-PX |
| | ) | |
| CORELOGIC RENTAL PROPERTY | ) | |
| SOLUTIONS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## INJUNCTIVE RELIEF ORDER

On [_____], 2018, the Court entered its Order granting the Motion for Final Approval of Class Action Settlement and Entry of Final Judgment and Order (Dkt. No. ____). Pursuant to that Order and Section 4.3.1 of the Settlement Agreement and Release, dated August 29, 2017 (the "Settlement Agreement"), the Court enters this Injunctive Relief Order and hereby orders that Defendant CoreLogic SafeRent, LLC ("Defendant") comply with the following term of the settlement: Defendant shall cease using the phrases "Statewide Criminal Search Report by Crimcheck America," "Multistate Criminal Search Report by Crimcheck America," or "Sex Offender Search Report by Crimcheck America" in the criminal record section of file disclosures sent to consumers in response to a copy of a request for their consumer file.

For purposes of this Injunctive Relief Order, the Court adopts and incorporates the definitions and meanings of the defined terms set forth in the Settlement Agreement. The terms of this Injunctive Relief Order are intended to reflect the Injunctive Relief provisions in the Settlement Agreement and shall not be construed to impose any obligations or requirements in addition to those set forth in the Settlement Agreement.

If any member of the File Disclosure Settlement Class has a claim or dispute regarding Defendant's compliance with this Settlement Agreement, including but not limited to the injunctive relief applicable to that Class Member, then such Class Member first must submit, *pro se* or through counsel, his or her dispute directly to the Defendant before taking any other action. Upon receipt of such a dispute, the Defendant will investigate the dispute and respond to the Class Member within thirty (30) days.  The Defendant's response must state the results of the Defendant's investigation of the allegation of non-compliance with the Settlement Agreement and any action taken or to be taken to address the Class Member's dispute; or, if additional information is required for the Defendant to complete its investigation, the Defendant's response must identify the specific additional information that is required.  Upon the Class Member's submission of all of the additional information required (as set forth in the Defendant's response), the Defendant will have thirty (30) days to complete its investigation of the Class Member's dispute regarding the allegation of non-compliance with the Settlement Agreement and to provide a response containing the results of its investigation and any action taken or to be taken to address the dispute.

If, after the dispute resolution process described above has been completed, the Class Member wants to seek additional remedies, then he or she may submit his or her dispute regarding the allegation of non-compliance with the Settlement Agreement to the Court (pursuant to the Court's retention of exclusive jurisdiction under Section 9.4 of the Settlement Agreement) under the caption for this Litigation.  The Class Member's submission to the Court must include copies of all correspondence between the Class Member and the Defendant regarding the dispute prior to the submission.  The Court shall have exclusive and sole jurisdiction to resolve the dispute.

Any action by Defendant determined in good faith to be reasonably necessary to comply with any federal, state, or local law, enactment, regulation, or judicial ruling shall not constitute a breach of the Settlement Agreement or this Order.   In the event that any obligation that Defendant has agreed to undertake in the File Disclosure Settlement Class Injunctive Relief becomes inconsistent with any future federal, state, or local law, enactment, regulation, or judicial ruling or if the File Disclosure Settlement Class (or any subset thereof) agrees to impose less stringent requirements on any competitor of Defendant, then Defendant shall be released from performing such obligation after notice to the Court and Class Counsel.   Any objection to such change in procedure shall be made to the Court by Class Counsel within ten (10) days of such notice.

The Court reserves continuing and exclusive jurisdiction over the parties with respect to all matters relating to this Injunctive Relief Order, including its administration, interpretation, effectuation, and enforcement of its provisions pursuant to the dispute resolution process in Section 9.3 of the Settlement Agreement.   None of the parties, including any File Disclosure Settlement Class Member, shall be entitled to the recovery of attorney's fees, costs or other expenses in connection with any efforts to monitor compliance with this Injunctive Relief Order.

**IT IS SO ORDERED.**

Dated: _____          _____
                                      HONORABLE PAULA XINIS
                                      UNITED STATES DISTRICT JUDGE